BANK OF GREENSBORO v. ABRAM CLAPP and others.

*Contract of Sale — Vendee's Interest Therein — Trustee — Misappli-*
*cation of Trust Fund — Liability of One Who Participates.*

1. The interest in real estate of a vendee under a contract of sale, is an equitable estate and capable of assignment or mortgage.

2. When the vendee has conveyed such interest by deed of trust and also by a posterior mortgage, the mortgagee has an equity to be re-imbursed such portion of the purchase money unpaid by the vendee as he may pay to perfect the legal title to the premises.

3. Where a Bank, in whose hands is a trust fund, participates with the trustee in a misapplication of the fund; *Held,* that the Bank is liable to the *cestui que trust* for any loss thereby incurred.

CIVIL ACTION, tried at Fall Term, 1876, of GUILFORD Superior Court, before *Kerr, J.*

The plaintiffs alleged that theretofore the firm of Shields & Co. owned certain premises (mentioned in the complaint,) and were conducting a licensed distillery thereon. They became indebted to the government for taxes and said premises were sold at public auction for cash on the 27th of May, 1871, when the defendant Owen became the purchaser in the sum of $2700. In order to raise the money to pay his bid he borrowed said amount of the plaintiff, upon the execution of an instrument of writing, of which the following is a copy:

"This instrument witnesseth, that whereas on the 27th of May, 1871, the premises of the 'Greensboro Steam Distillery'—about five acres of land with improvements, steam engine, boilers, &c.—were sold by order of C. S. Winstead, Collector of Internal Revenue, on account of taxes assessed upon Shields & Co., the proprietors and owners of said property; and whereas, Thomas M. Owen became the purchaser at $2700; and whereas, the Bank of Greensboro did advance

and lend to me, for the purpose of paying for said property, the said sum of $2700, as per my note of this date ; Therefore, I do hereby assign, transfer and make over to said Bank, my bid for, and right, title and interest in said property, as a guaranty for the payment of said note. And said Collector or his successor in office is hereby empowered and requested to make a deed at the twelve months maturity, to the said Bank instead of to me. This instrument to be void in case I discharge said note to the satisfaction of said Bank.

Thomas M. Owen.

June 1st, 1871."

Knowing that Shields & Co. had the right to redeem their property at any time within twelve months, the defendant Owen, in order more effectually to secure the plaintiff, executed another instrument, of which the following is a copy :

"To Mr. C. S. Winstead, Collector, &c. In case Shields & Co. should redeem the property sold by Thomas M. Owen, Dep. Collector and bought by me, I will thank you to pay the said money to the Bank of Greensboro, as I borrowed the purchase money from the Bank and gave them an instrument transferring my bid for and interest in said property to secure the payment of my note to said Bank for said purchase money. June 5th, 1871. Thomas M. Owen."

Shields & Co. failed to redeem and thereupon the plaintiff applied to the Collector for a deed but was informed that $835.40 of the purchase money had not been paid by defendant Owen, and that no deed would be executed until it was paid. So the plaintiff paid the amount on the 25th of January, 1875, and obtained a deed.

The plaintiff insists that it is entitled to hold said property as a security for both of said amounts, $2,700 and $835.40, and demands a sale of the premises to satisfy the same.

The defendant Clapp alleged, that under a decree of Court in another action wherein the Executors of one Summers were plaintiffs, and Mrs. Wright and Mrs. Cobb, femes covert, were defendants, his co-defendant Owen had been appointed trustee for said femes covert. In that action it was adjudged that the defendants Wright and Cobb, the heirs of said Summers, were entitled to a sum of money to be paid by said Executors, and that said Owen their trustee should execute a deed in trust to the defendant Clapp, who was then the Clerk of said Court, to secure and protect the estate of said femes covert. Accordingly Owen executed the deed to Clapp on the 23d day of May, 1872, conveying the premises hereinbefore mentioned, to the end that such funds as should come into his hands as trustee aforesaid, might be secured.

The said deed from Owen to Clapp was registered on the 11th of September, 1872, and the said instrument from Owen to plaintiff was not registered until the 2d of March, 1876.

After the execution of said deed to Clapp, the money to which the said femes covert were entitled as heirs of Summers, was paid to said Owen as their trustee, who still held it by virtue of his appointment as trustee and by his conveying said premises in trust to secure the payment thereof.

The defendant Owen paid to plaintiff an amount sufficient to discharge the said note for $2,700, but the money was not applied to said note as directed by Owen. It was also alleged that the plaintiff contracted for and took from said Owen, usurious interest.

The defendant Clapp insisted that said premises should be sold and the proceeds applied to the payment of the amount due from said Owen to said femes covert.

The other facts material to the points decided are stated by the CHIEF JUSTICE in delivering the opinion of this Court.

The jury rendered a verdict in favor of the plaintiff. Judgment. Appeal by defendants.

*Messrs. Smith & Strong* and *Scott & Caldwell*, for plaintiff. *Mr. Thomas Ruffin*, for defendants.

PEARSON, C. J. On the argument, the counsel properly conceded that as both sides claim under Owen and as the Collector of Internal Revenue had ratified the transaction and had passed the legal title, neither side could call in question the validity of Owen's bid.

1. Taking Owen's bid to be valid, the first question is in regard to the character of the instrument executed by Owen to plaintiff on the 1st June, 1871. Every feature in the face of that instrument shows it to be a mortgage. It is a present conveyance of an estate, to be void on repayment of money lent. In other words it is a conveyance of an estate as a security for the payment of Owen's note to the Bank. The instrument uses apt words of present conveyance and cannot be tortured into a mere executory contract of substitution.

Owen by force of his bid had the equitable estate, which he could transfer absolutely or by way of mortgage. A mortgagor transfers his equity of redemption, the conveyance to be void on the payment of a debt. This is a second or what is termed "an imperfect mortgage," because the legal estate does not pass. Still it is a mortgage and must be registered. About this there can be no question.

A vendee by force of the contract of sale becomes the equitable owner; this is taken for granted in all of the books, and he may assign or mortgage his equitable estate.

When Owen bid off this property he thereby became the owner of an equitable estate. Why could he not transfer it by way of mortgage? True, it is an imperfect mortgage, because the legal estate did not pass and could not be called

for until the price, to-wit, the amount of his bid, was paid. Still it is a mortgage and falls under the operation of the Registration Act. This is too plain for discussion.

2. Having "opened the log," as rail splitters say, all that is left to be done is to work up the parts.

Conceding that the defendant Clapp acquired a prior title to the equitable estate of Owen by the registration of the deed of trust, the plaintiff says; "In order to get the legal title I was obliged to pay $835. This was not an officious act; the United States Revenue Officer would not make the deed until that amount was paid, being the balance due on Owen's bid. I thought I was getting the legal title for my own benefit in the first instance; it turns out that you have a prior title to the equitable estate and I am to be postponed; but surely the amount paid by me to acquire the legal title, as it enures to the benefit of both of us, is a charge on the property in the absence of any suggestion of fraud or underhand dealing on my part."

This charge of $835 on the property is a clear equity. It remains to be seen whether the defendant has established a counter claim sufficient to meet it and as he says to overrun it.

3. At the time, Owen, by his appointment of trustee for Mrs. Wright and Mrs. Cobb, was authorized to receive the trust fund, it was in the hands of the plaintiff and the executors of Summers held certificates of deposit; the fund was transferred to Owen by a transfer of those certificates. Thereupon Owen checked out $2,500 cash and left the residue $3,022 in the hands of the plaintiff. The plaintiff was not bound to see to the application of the $2,500; but was bound to abstain from any participation in a breach of trust on the part of Owen. Here the plaintiff not only participated in Owen's misapplication of the trust fund, but took "the lions share," and applied the whole $3,022 to the discharge of old debts of Owen on the ground that these old

debts were not secured, whereas the debt of $2,700 as it was supposed was secured by the property transferred by mort-gage, 1 June, 1871.

In making this application the plaintiff acted under an entire misapprehension in respect to the rights of Owen over the trust fund. It was his duty to invest the fund for the benefit of his *cestui que trusts* and although he had given se-curity not to violate that duty, that did not authorize him to commit a breach of trust in using the money as if it was his own. Nor did it authorize the plaintiff in order to save a desperate debt to participate in a breach of trust, in order to reap the benefit thereof.

The fact that the plaintiff, that is to say, Mr. Lindsay the President, Mr. Gray the Cashier and the Officers had notice that the fund transferred to the credit of Owen was a trust fund belonging to Mrs. Wright and Mrs. Cobb is conceded ; for it is set out on the books of the Bank, and the wonder is, that intelligent gentlemen, with the hope of saving a des-perate debt, should allow themselves to participate in a gross fraud, attempted to be practiced by Owen upon these two good ladies. Fortunately for them they are able to trace the fund and have a right to follow it in the hands of any one who is not a *bona fide* purchaser for valuable considera-tion, which character the plaintiff very clearly does not fill.

4. We are not called on to decide the question made by the answer as to the effect of the plaintiff's having lent the money to Owen at 1½ per cent a month or to investigate the question for what reason was Owen required to pay out of the amount of his note a debt of some $1,400, due to the Bank by Shields ; or whether Owen's evidence that when he left the $3,022 in Bank he directed that enough thereof should be applied to pay off the balance due to the Bank by reason of his note of $2,700, so as to let Mrs. Wright and Mrs. Cobb have a clear title under the deed to Clapp, ought

to have been received or rejected.; nor to consider the bearing of the fact that the Officers of the Bank at the time of the misapplication believed the Bank held a prior title to a part of the property conveyed to Clapp to secure the trust fund.

5. Decree in the Court below reversed. There will be a decree here, that the property conveyed by the deed of trust to defendant Clapp be sold by the Clerk of this Court and the proceeds of sale will be held subject to further order. If requested by plaintiff the Clerk will take an account of the other property conveyed by the deed of trust to defendant Clapp, with a view of marshalling the assets if necessary.

The proceeds of the sale of the property bought by Owen at the sale for the taxes of Shields & Co. will be applied to replace the trust fund which he misapplied, to-wit; the $2,500 checked out by him and the $3,022, minus the $835 used by plaintiff to obtain the deed of the Collector of Revenue. Should there be an excess the plaintiff is entitled to it, should there be a deficit to make good the $3,022, (minus $835) wrongfully applied by the plaintiff to Owen's old debts, the defendant Clapp, as trustee of the fund will have a decree, that the plaintiff pay to him the amount necessary to re-imburse that sum to the trust fund as to which there may, after the report of sale, be an account, if either of the parties be so advised.

PER CURIAM.                        Judgment accordingly.