W. L. WHITE v. ANN JONES and others.

*Confederate Money—Purchaser at Administrator's Sale—Rents—
Betterments.*

1. A bond executed in 1863, payable four years after date, which contains an express stipulation that payment in specie is not to be demanded, and the obligor at the time, instead of giving the bond, tendered a cash payment in Confederate money which was declined, is not solvable in Confederate currency. But it was not error, in this case, to reduce it to the amount of another bond to which the scale of depreciation was applied—the two bonds being made with reference to the same transaction, and with the understanding that what would pay the one should be taken in payment of the other.

2. Where A purchased land at an administrator's sale, and, after paying a part of the purchase money, assigned his interest to B, taking from him a promise to pay the balance due the administrator and his bond for the part A had paid, and B afterwards assigned to the plaintiff for a valuable consideration; *Held,* that the plaintiff, upon payment of the balance *due the estate,* is entitled to receive a deed from the administrator for the land, unencumbered with any lien in favor of A. But the amounts paid by A, after plaintiff acquired his equitable title, being such as the plaintiff must have paid to get the legal title, operate as liens upon the land.

3. The plaintiff, in such case, having the right to the land, is entitled to the rents and profits.

4. Betterments and reparation of the premises touched upon, and the distinction noted.

(*Smith* v. *Brittain,* 3 Ired. Eq., 347; *Bank* v. *Clapp,* 76 N. C., 482; *Wetherell* v. *Gorman,* 74 N. C., 603; *Smith* v. *Stewart,* 83 N. C., 406, cited and approved).

CIVIL ACTION tried on exceptions to a referee's report, at Spring Term, 1881, of WILKES Superior Court, before *Seymour, J.*

Mrs. Rachael Stokes died in Wilkes county in the year 1860, leaving a last will, in which she directed all of her property of every description to be sold upon a credit of twelve months, as soon as it could be conveniently done, after her death. She nominated her son, M. S. Stokes, as executor, and he procured the will to be admitted to probate, but died without executing any of the trusts contained therein, and thereupon one Jacob Fraley was appointed and qualified as the administrator *de bonis non* with the will annexed of Mrs. Stokes.

Acting under the power contained in the will, the said Fraley proceeded to sell at public sale, on the first day of January, 1863, all the property belonging to the estate of his testatrix, and amongst other things a valuable tract of land situate in said county, on the north side of the Yadkin river known as the "Old Stokes Homestead," which was bid off by the defendant Bledsoe and one W. P. Maxwell at the price of twenty-six thousand one hundred and eighty dollars.

On the 21st day of the same month, the said Bledsoe and Maxwell paid to the said administrator the sum of sixteen thousand one hundred and eighty dollars in Confederate money, and took from him the following receipt:

"Received of Jesse Bledsoe and W. P. Maxwell, sixteen thousand one hundred and eighty dollars, towards the purchase money of a tract of land sold at public sale, on the first day of January, 1863, it being the lands known as the Old Stokes Homestead, on the north side of the Yadkin river, containing three hundred and seventy-five acres of land. January 21st, 1863. (Signed) JACOB FRALEY, Administrator, &c."

At the same sale, Bledsoe and Maxwell also purchased articles of personal property, amounting to $1,395.99.

On the 6th day of March, 1863, Bledsoe and Maxwell sold and assigned their interest in said land to one Joseph Gray, the father-in-law of the plaintiff, and executed to him an instrument in words following:

"I, Jesse Bledsoe and W. P. Maxwell endorse our bid in the purchase of the Rachael Stokes farm on the Yadkin river, sold on the first day of January, 1863, to Joseph Gray. We transfer all our bids to Joseph Gray in everything purchased by us on the day of sale. March 6th, 1863.

(Signed)          JESSE BLEDSOE,
                     W. P. MAXWELL."

At the same time they took from said Gray the following instrument:

"For value received, I promise to pay Jesse Bledsoe and W. P. Maxwell the sum of sixteen thousand one hundred and eight dollars, in payment of the Stokes land—the remaining part to be paid the administrator of the deceased for all the balance due from us (them) to the estate. Given under my hand and seal, the 5th day of March, 1863.

(Signed)          JOSEPH GRAY, [Seal]."

In addition to the above, Gray promised to pay Bledsoe and

Maxwell an advance of $2,000 upon their bid for the property purchased by them at the sale.

On the 18th day of April, 1863, Gray offered to pay to Bledsoe and Maxwell the said sum of $16,180, so secured by his bond, in Confederate money, but they declined to receive the whole amount from him, and thereupon he paid them the sum of $10,680, in such money, and gave them another bond, as follows :

"Forty-five months after date, I promise to pay to the order of W. P. Maxwell and Jesse Bledsoe, the sum of seven thousand five hundred dollars, bearing interest from date at two per cent. for the first twenty-one months, the remaining time at six per cent., value received. Witness my hand and seal, thi sthe 18th day of April, 1863. The above amount not to be exacted in specie. (Signed)        JOSEPH GRAY, [Seal]."

On the 27th day of July, 1866, the said Gray being insolvent, conveyed his interest in the land mentioned to one Job Worth, in trust to secure certain debts which he was then owing to one Bitting, and upon a failure to pay the same, the said Worth afterwards sold said interest at public sale, when the plaintiff became the purchaser at the price of $101, and took a deed therefor.

The said Maxwell having died, the defendants, A. B. Cox and F. J. McMillan, were duly appointed and qualified as his administrators, and on the 1st day of March, 1867, the said Fraley, as administrator with the will annexed of Mrs. Stokes, executed a deed, whereby he conveyed the same tract of land to the said Cox and McMillan, upon trust that in case the balance still due the said Fraley upon the original purchase money of the land should not be paid by the 1st of January, 1869, then they should sell the land, and after paying the said purchase money, to divide the balance equally between the defendant Bledsoe and the defendant heirs-at-law of the said Maxwell, deceased.

Shortly after the execution of this last mentioned deed, and before the adoption of the constitution of 1868, the said Cox

and McMillan instituted an action of ejectment, in which they were joined by all the heirs-at-law of the said Rachael Stokes, as plaintiffs, against the said Joseph Gray, for the possession of the said tract of land, and at fall term, 1869, of Wilkes superior court, recovered judgment against him, and soon thereafter evicted him and put the defendant Bledsoe in the possession of the land, who remained in possession, receiving the profits until the year 1877, when a receiver was appointed under an order of the court, rendered in this cause, who has ever since received the rents.

The administrator, Fraley, died in the year 1872, and soon thereafter the defendant, Q. F. Neil, was duly appointed administrator *de bonis non* with the will annexed of Mrs. Stokes.

The plaintiff asks that he may be declared by the court to be entitled to the equitable interest in the said land acquired by Bledsoe and Maxwell by their purchase from the administrator, Fraley, and that an account may be taken to ascertain how much is still due the estate for the purchase money therefor, and that upon the payment of the same, after applying the rents and profits received by the defendants in discharge thereof, he may have such conveyance made to him as may be necessary to perfect his title.

The defendant, Bledsoe, in his answer, alleges that it was expressly agreed between the plaintiff's assignor, Gray, and himself and Maxwell, that the bond given them on the 18th day of April, 1863, for $7,500, should be paid in good money, though specie was not to be demanded; and that note was drawn as it was, for the reason, that, in order to raise part of the money they paid to Fraley for the land, they had borrowed a like sum of $7,500 from one Edwards, and had given him their bond similar, as regards the time of its falling due and the rate of interest, with the bond taken from Gray, and that it was intended by the parties that the proceeds of the one should be used in discharging the other; and he insists that the plaintiff ought not to have title to the land sued for, until he shall pay off and discharge this bond of Gray, as well as the balance due to the estate

of Mrs. Stokes. He also alleges that after the assignment of their interest to Gray, he and Maxwell were called on to make payments upon the purchase money of the land, and that they did make such; and he insists that these sums should also be declared to constitute liens upon the land, to be discharged before the plaintiff shall be permitted to have the title thereto secured to him; and likewise, the sum due the estate upon their purchase of personal property.

The defendant heirs-at-law of Mrs. Stokes deny that the administrator, Fraley, sold the property, or that he had a right to sell it for Confederate money, and they insist that neither the plaintiff nor Bledsoe, who has since purchased the interest of Maxwell in the premises, is entitled to have the land without paying its value in good money, which they allege to be $10,000, and that the rents and profits, which have been enjoyed by Gray and Bledsoe, far exceed in value any and all payments that have been made upon the purchase money.

By consent of all the parties, the cause was referred to M. L. McCorkle, to take and state an account of all matters in controversy between them, and afterwards he was particularly directed to inquire and report as to the currency in which the bond for $7,500, given by Gray to Bledsoe and Maxwell, on the 18th of April, 1863, was solvable.

The referee made his report, setting forth his findings of fact and his conclusions thereon, as follows:

1. That Jacob Fraley, as administrator with the will annexed of Rachael Stokes, deceased, offered for sale on the 1st of January, 1863, at public sale, the lands mentioned in the pleadings, and that the defendant Bledsoe and W. P. Maxwell, now deceased, became the purchasers thereof at the price of $26,180, on a credit of twelve months.

2. That soon thereafter the said purchasers paid to the said administrator, in Confederate money, the sum of $16,180, less interest on that sum for one year, which amounted to $970, thus reducing the credit, to which they were entitled, to the sum of

$15,210, and leaving the balance of $10,970 still due on the purchase money of the land.

3. That the value of the land at the time, in good money, was $10,000, and deducting the payment made in the proportion of $10,970 to $15,209, it left unpaid of the purchase money the sum of $4,190.50 to be paid in good money.

4. That the defendant, Bledsoe, on the 2d of March, 1871, paid to said administrator, Fraley, towards the purchase of said land the sum of $1,000, and again on the 19th of June, 1871, the sum of $140, and these two sums taken from the interest which accrued up to the 1st of April, 1880, left due for interest at that time the sum of $3,001.33, which, added to the balance of principal due, made the sum of $7,391.83, due to the estate of Mrs. Stokes, as the purchase money of the land.

5. That said Bledsoe and Maxwell assigned their interest in the land to Joseph Gray, in consideration of the sum of $16,180, and a *bonus* to them of $2,000—the said Gray agreeing to discharge the balance of the purchase money for the land and the personal property purchased by them at the sale; and that in pursuance thereof the said Gray, on the 6th day of March, 1863, gave his bond to them for the said sum of $16,180, which bond he afterwards, on the 8th April, 1863, took up by paying them in Confederate money the sum of $8,680, and giving another bond for $7,500, payable forty-five months after date.

6. That the said sum of $7,500 was to be paid in good money, or such as could be used in discharging a debt of a similar character and for a like amount, which the said Bledsoe and Maxwell were owing to one Edwards.

7. That the said Edwards' debt was afterwards scaled, and by applying the same scale to the bond for $7,500, it would be reduced to the sum of $4,408.94, which, with interest to the 1st of April, 1880, gives the sum of $7,188.56, as being due thereon.

8. That Bledsoe and Maxwell purchased at the same sale personal property to the amount of $1,395.99, in Confederate

money, which, being scaled, gives the sum of $465.33, amounting, with interest to the 1st April, 1880, to $946.93.

9. That Bledsoe is entitled, for betterments put upon the land while in his possession, to receive the sum of $366.56.

10. That the defendant, Bledsoe, is entitled to have repaid to him the sum of $1,000, paid by him towards the purchase money of the land on the 2d of March, 1871, and the sum of $140 so paid on the 19th of June, 1871 ; thus making the sum due to him from all sources, with interest to the 1st April, 1880, to be $10,260.66.

11. That the defendant, Bledsoe, together with the son-in-law, who was the receiver appointed by the court, has received the crops made upon the lands for eleven years—that of the year 1869 being worth $740.

12. That the other crops from January 1st, 1870, to January 1st, 1880, after paying taxes and the necessary repairs, &c., were worth on an average the annual sum of $600—thus making the sum due from him for rents, with interest thereon, to be $8,882.10—which, deducted from the sum of $10,260.66, found to be due by him, leaves a balance of $1,378.56.

13. That the rents and profits of the land, from January, 1869, during which time the said Joseph Gray had possession of the premises, amounted to the sum of $6,000, which, with interest to the 1st of April, 1880, made the sum of $10,950.

14. That the sum of $7,391.83, found to be due to the estate of Rachael Stokes for the purchase money of the land, is a lien thereon, the title having been reserved until the payment thereof.

15. That the defendant, Bledsoe, and the estate of W. P. Maxwell, deceased, are still responsible to the estate of Mrs. Stokes for the personal property purchased by them at the administrator's sale in 1863.

16. That the defendant, Bledsoe, has also a lien upon the land, subject to the prior lien for the purchase money due the estate for the balance due him on the $7,500 bond, and other payments made by him towards the purchase money of the land, and also

for the amount due upon their purchases of personal property, as scaled.

17. That the legal and equitable title to the land is in the heirs-at-law of Mrs. Stokes and the defendant, Bledsoe, to be held by them in trust, until the sum of $7,391.83 is paid to the estate, and the sums of $1,376.56 and $946.93 are paid to the defendant, Bledsoe.

Exceptions to the report of the referee were taken by both parties.

By the plaintiff:

1. For that he erred in taking the value of the land in 1863, to-wit, $10,000, as the basis in ascertaining the balance of purchase money due after deducting the $16,180 paid by Bledsoe and Maxwell, and instead thereof he should have taken the price of the land in Confederate currency, and scaled the same at the rate of 3 for 1, and thereby the balance should have been $3,333.33⅓ and not $4,190.50, as reported.

2. For that he erred in holding the sum due to Bledsoe and Maxwell upon the $7,500 bond was payable in good money, and the same should have been treated as solvable in Confederate money.

3. For that he erred in holding the defendant, Bledsoe, to be entitled to the sum of $366.56, for betterments.

4. For that he finds, in paragraph 10 of his report, that the sum of $10,260.66 is due from Joseph Gray to the defendant, Bledsoe.

5. For that he finds that the rent for the year 1869, was only worth $740.00, whereas the evidence showed it to be worth $1,000.

6. For that he finds that the rents from January, 1870, to January, 1880, were worth only $600 per year, whereas the testimony shows them to have been worth $1,000 per year; and also, because in the 12th paragraph of his report the aggregate of the rents is applied to the payment of the debt, ascertained to be due the defendant, Bledsoe, from the said Gray, whereas,

it should have been applied to the payment of the amount due the estate of Mrs. Stokes for the purchase money of the land.

7. For that he finds in paragraph 14 of his report, that there is yet due for the land the sum of $7,391.83.

8. For that in the 16th paragraph he finds that the sums ascertained to be due the defendant, Bledsoe, constitute a lien upon the land as against the plaintiff.

9. For that he erred in finding that the legal and equitable title to the land in question, is in the heirs-at-law of Mrs. Stokes and the defendant, Bledsoe.

By the defendant, Bledsoe:

1. For that the referee deducted a year's interest from the cash payment of $16,180, made by Bledsoe and Maxwell.

2. For that he took the value of the land in 1863, as the basis for ascertaining the balance of purchase money due, instead of the price agreed upon in Confederate money; and scaling the same, whereby the true amount would be ascertained to be $3,333.33⅓.

3. For that he failed to give credit for the sum of $269 paid by Bledsoe to one Call, as agent of the administrator, Fraley, on the —— day of June, 1871.

4. For that he failed to charge the plaintiff with the sum of $269 in favor of the defendant, Bledsoe.

5. For that he charged the defendant, Bledsoe, with the rents of 1877, 1878 and 1879, when the same were in the hands of the receiver, and held by him under the orders of the court.

6. For that he failed to charge the plaintiff with the $7,500 bond, and interest at par, and only charged him with the sum at which the Edwards debt was settled.

7. For that the rents charged against the defendant, Bledsoe, for the years 1869, 1871, '72, '73, '74, '75 and '76, were excessive.

8. For that he finds that the defendant, Bledsoe, is still indebted to the administrator of Mrs. Stokes for the purchase money of the personal property bought at the sale in 1863—that matter not being in controversy in this action.

At the trial, the judge below sustained the first, fourth, seventh and ninth of the plaintiff's exceptions, and the first, second, third, fifth and eighth of the defendant's exceptions, and there was no appeal taken to the rulings thereon. He also sustained the plaintiff's third exception as to the sum allowed the defendant, Bledsoe, for improvements put upon the land, and overruled his second, fifth, sixth and eighth exceptions; and he sustained the fourth and seventh exception of the defendant, Bledsoe, fixing the rents for the years 1871, '72, '73, '74, '75 and '76, at $540 per year, and overruled his sixth exception.

From the rulings upon these several matters the plaintiff and the said defendant, Bledsoe, respectively appeal.

*Messrs. J. M. Clement* and *G. N. Folk*, for plaintiff.

*Messrs. D. M. Furches, Merrimon & Fuller* and *Robbins & Long*, for defendant.

RUFFIN, J. Without reference to the order in which they occur, the principal questions presented in the two appeals seem to be:

1. Whether the bond, mentioned in the record as having been given by Joseph Gray to the defendant, Bledsoe, and his associate in the purchase of the land, W. P. Maxwell, on the 18th day of April, 1863, for $7,500, was solvable in Confederate money, and therefore liable to be scaled, as prescribed in the statute, as is contended for by the plaintiff.

2. Whether it was proper, as was done by the referee, to reduce the amount to be paid upon such bond to the sum at which the said defendant and Maxwell were able to settle the debt, of a similar character, which they owed to one Edwards.

3. Whether the sum due upon said bond for $7,500, and the other sums paid by said Bledsoe and Maxwell upon the purchase money for the land, which is the subject of controversy, were rightly treated as constituting liens upon the same, which the

plaintiff must discharge before he can be permitted to have the title assured to him.

4. Whether the sums due from the defendant, Bledsoe, for rents, during his occupation of the land, are to be appropriated to the satisfaction of the amount ascertained to be due him, or to the debt still due the estate of Mrs. Stokes for the balance of the purchase money thereof.

*As to the first.* The bond, though dated in 1863, was made payable four years thereafter, and for half that period its rate of interest was fixed at two per cent., and for the other half at six, and it contains an express stipulation that *specie* was not to be exacted upon it. These circumstances would of themselves tend strongly to exclude the presumption, arising from its date, that its discharge in Confederate money was contemplated by the parties; and when to them we add the further fact, admitted to be true, that the obligor at the time, instead of giving the bond, tendered an immediate cash payment in Confederate money, and the same was declined, it would seem to be conclusive as to the point, and to show that it was not intended that the debt secured thereby should be paid in the then existing currency, already greatly depreciated and rapidly and constantly sinking in value.

*Second.* The testimony of the defendant, Bledsoe, himself, is the only evidence which bears upon this point, and it is to be observed that the same was received without objection. From it, it appears that having borrowed from Edwards some portion of the money with which they made their first cash payment for the land, and given him their bond therefor, Bledsoe and Maxwell desired to so shape and direct their debt upon Gray, contracted for the same land, as that it might afford them protection against the other, and that it was with this understanding and for this special purpose, that Gray was induced to change the form of his bond as originally given. With this view the two debts were made to correspond with one another, as to their amounts, their rates of interest, and their length of credit; and the conclusion seems irresistible, that it was the understanding

of the parties that what would pay the one should be taken in payment for the other.

*Third.* the original sale, at which Bledsoe and Maxwell became the purchasers, was in January, 1863, professedly upon a credit of twelve months, though upon an understanding, in fact, that in order to secure its payment in Confederate money, it should be sooner paid.

In March following they assigned their interest to Gray, taking from him a promise to pay the balance due the administrator, and his bond for a portion of the money they had themselves paid upon the land, which bond was in April following, surrendered and another taken, payable forty-five months after date; so that it is clear to be seen, that the intention and expectation of the parties were, that upon his paying to the estate the unpaid portion of the purchase money, Gray was to receive the title to the land, unencumbered with any liens in favor of his immediate vendors. Their assignment to him was an absolute and unconditional one, therefore, so far as it depended upon the intention of the parties and their contract; and in the same plight and condition he had a right to assign it, and did assign it; and in that condition it was acquired by the plaintiff; and we know of no principle of equity upon which, under such circumstances, he should be deprived of the full benefit of his acquisition.

The principle, so earnestly invoked for the defendant, that the purchaser of a mere equitable estate takes it subject to all attaching equities, has no application to the case, but it is rather a conflict between equities, and the question to be determined is— whose equity, the plaintiff's or the defendant's, is the superior one.

Ordinarily, in the case of such conflict, the rule of priority is the same as that which governs in the case of the transfer of legal estates, and preference would be given to that equity which was older in point of date. But as is said in Adams' Equity, 148, where neither party has the legal title, but the one *has a perfect equitable title by conveyance,* while the other *an imperfect*

*one by contract,* then a new principle is introduced, and that equity which grows out of a contract *in rem,* will be considered superior to the other, and preference will be given to it, though junior in point of time.

Applying this principle to the case in hand, there can be no longer any question between the parties as to whose equity the superiority attaches. The plaintiff derives his by a direct and unbroken line of conveyances, whereas the equity insisted on for the defendant, of postponing the plaintiff's until the debt on Gray is satisfied, grows out of no contract, but rather, as we have seen, is in defiance of his contract, and depends upon the 'supervening circumstance of Gray's insolvency.

Were Gray the plaintiff in the action, tendering the balance of the purchase money to the administrator, and seeking to have the title assured to him, then, the court might well, and doubtless would, withhold its aid until he had, as well, paid the debt due to his immediate assignor—and this, independently of any contract, and upon the principle that he who would have equity must first do equity.

But no such principle can affect the conscience of the present plaintiff, who, by contract and for a valuable consideration, has acquired an equity to the specific property, from one in whose power the defendant himself placed it freed from the lien of his debt, and whose equity is no matter of right growing out of a contract, but depends upon the mere benignity of the court.

Our conclusion, therefore, is, and it seems to be fully supported by the reason given for the decision in *Smith* v. *Brittain,* 3 Ired. Eq., 347, that it was error in the court below to hold that the debt due from Gray to the defendant, Bledsoe, on the $7,500 bond of the 18th April, 1863, constituted a lien upon the land in question, to be discharged by the plaintiff before he could be permitted to acquire the legal title from the administrator, and to this extent the judgment of that court is reversed.

As to the other sums paid by Bledsoe, to-wit: the $1,000 paid on the 2d March, 1871, and $140 on the 19th June, 1871, and

$269 paid June, 1871, they were paid after the plaintiff had acquired his equitable title, and were such as he himself must needs have paid before he could call for the legal estate; and, not having been officiously paid by the defendant, they constitute a clear equity against the plaintiff, and until discharged operate as liens upon the land. See *Bank* v. *Clapp*, 76 N. C., 482, a case on all fours with the present, as to this particular point, and strongly resembling it in many other of its features.

*Fourth.* The same reasoning, which secures for the equity of the plaintiff its preference over that of the defendant, must necessarily determine the question as to the proper application of the amount due for rents and profits in favor of the plaintiff. If the land be his, as we hold it to be, subject only to the debt due for the original purchase money, then it must follow that the rents are his; and no reason can be assigned why they should be appropriated to the satisfaction of a debt due the defendant, for which another, and not the true owner, is bound.

Virtually, the relation subsisting between the plaintiff and the heirs-at-law of Mrs. Stokes, since his purchase of the equitable interest, is that of mortgagor and mortgagee, and having by their action at law evicted him and put the defendant, Bledsoe, in possession, they are accountable to him for the rents, and must look to their tenant, Bledsoe, for the same.

As to the values of the rents, composing the subject-matter of the fifth and sixth of the plaintiff's exceptions, we affirm the ruling of the court below, not that we feel sure that the estimate is as high as the weight of the testimony would warrant, but that in the conflict between the several witnesses in regard to the matter, we are unable to say, with certainty, that it was too low.

Without determining the general question as to the right of a mortgagee, when called on to account for rents and profits received while in possession, to deduct for improvements put upon the premises, we feel constrained to affirm the judgment rejecting the claim for betterments in this particular case. The referee, in determining the question, seems to have been gov-

erned solely by the costs of the improvements, and not the enhanced value of the land by reason thereof. This, according to well settled authorities, is not the correct rule. *Wetherell* v. *Gorman,* 74 N. C., 603; *Smith* v. *Stewart,* 83 N. C., 406. As the defendant wholly failed, so far as the case shows, to offer evidence as to any enhancement in the value of the land, by reason of his improvements, whereby the error of the referee might be corrected, there is nothing left for the court, except to do as His Honor below did, and reject the charge altogether—and this we are the more ready to do, because, upon looking into the evidence, we find that the alleged betterments for which remuneration is sought, consisted rather of reparations than of additional improvements, and from his estimate of the annual rents, the referee expressly deducted the costs of repairs.

As to the sum due the defendant for the personal property re-sold to Gray, sought also to be made a charge upon the land, we deem it only necessary to say, that if the debt due for the land itself cannot follow it in the hands of the plaintiff, much less can that due for the personalty, which, so far as we can discover, never came to the plaintiff's possession, or was ever claimed by him.

This court, therefore, sustains the 6th and 8th exceptions taken by the plaintiff, and doth declare that the land in controversy is subject to no lien in favor of the defendant, Bledsoe, for his debt, due from Gray upon the bond given the 18th of April, 1863, though it is subject to a lien in his favor for all other amounts paid by himself or Maxwell towards the purchase money thereof.

It is also declared, that the plaintiff is entitled to credit upon the debt due the defendant, Neil, as the administrator of Mrs. Stokes, for the balance of the purchase money for the rents ascertained to have been received by the defendant, Bledsoe, and such as are in the hands of the receiver appointed by the court, and, subject to such credits, the said debt due the administrator is the first lien upon the land.

All other exceptions taken to the rulings of the judge below, whether by the plaintiff or defendant, are overruled.

There will be a referee to the clerk of this court to reform the account in conformity with this opinion, and the judgment of the court below, so far as the same was not appealed from; and the plaintiff will recover of the defendant, Bledsoe, the costs of both appeals.

PER CURIAM.                 Judgment accordingly.