W. L. WHITE v. ANN JONES et als.

*Petition to Rehear— Vendor's Lien—Specific Performance.*

1. A petition to rehear should point out the ruling which is alleged to be errone-
   ous, but should not, by a course of reasoning, undertake to show that it is
   erroneous. The argument should be made at the hearing, and not in the peti-
   tion to rehear.

2. The doctrine of the vendor's lien for unpaid purchase money, has long been
   repudiated in this State.

3. A court of equity will not decree the specific performance of a contract to convey
   land, until the full price has been paid ; but this does not rest on the doctrine
   of lien, but upon the rule that a court of equity will refuse relief to one who
   will not do what, in equity, he ought to do,

4. The rule announced in the former decision of this case affirmed, that where A
   purchased land, and after paying a part of the purchase money, assigned his
   interest to B, taking from him a promise to pay the balance due to the ven-
   dor and his bond for the part A had paid, and B afterwards assigns his interest
   to the plaintiff ; the plaintiff, upon paying the balance due *the estate*, will be
   entitled to a deed for the land, unencumbered with any lien in favor of B.

(*Womble* v. *Battle*, 3 Ired. Eq., 182 ; *Cameron* v. *Mason*, 7 Ired. Eq., 180 ; *Blevins* v.
   *Barker*, 75 N. C., 436 ; *Smith* v. *Brittain*, 3 Ired. Eq., 347 ; *Lewis* v. *Rountree*, 81
   N. C., 20, cited and approved).

PETITION by the defendants to rehear. The case is reported
in 88 N. C., 166.

*Messrs. R. F. Armfield* and *Batchelor & Devereux*, for the
plaintiffs.

*Messrs. D. M. Furches, D. G. Fowle, Fuller & Snow, E. C.
Smith* and *J. M. McCorkle*, for the defendants.

SMITH, C. J. The petition of the defendant Jesse Bledsoe,
asking us to review and reverse our former decision in the cause,
for an assigned error prejudicial to his claims, is not confined to
its proper office of pointing out the ruling wherein the error lies,
but undertakes, by a course of reasoning, to show the ruling to
be erroneous. The proper time to make the argument is at the

hearing, and we notice the departure from the simple and brief forms in use, to avoid the inference that this meets our approval, and that it may not become a precedent.

The brief, filed in support of the application, introduces the doctrine, long since repudiated in this State, which gives to the vendor of real estate, after conveyance to the vendee, a lien for the unpaid purchase money, of which we have only to say it can furnish no aid by analogy or otherwise, in the present case. *Womble* v. *Battle*, 3 Ired. Eq., 182; *Cameron* v. *Mason*, 7 Ired. Eq., 180; *Blevins* v. *Barker*, 75 N. C., 436.

In the former opinion, formed after much consideration of the whole subject matter involved in the appeal, occurs a sentence upon which stress is laid in the argument for the petition, expressed in these words:

"Were Gray, the plaintiff in the action, tendering the balance of the purchase money to the administrator and seeking to have title assured to him, then the court might well, and doubtless would, withhold its aid until he had as well paid the debt to his immediate assignor—and this independently of any contract, and upon the principle that he who would have equity must first do equity." *White* v. *Jones*, 88 N. C., 166 and page 179.

If this language were susceptible of an interpretation that recognizes the creation of a lien upon the equitable estate vesting in Gray, by virtue of the transfer of the bid of Bledsoe and Maxwell to him, which the assignee would be compelled to discharge, as well as to pay the remaining purchase money due to the administrator, before he could entitle himself to a decree for a conveyance of the legal title, it would be difficult to resist the reasoning, and the sustaining authorities cited, that the lien is transmitted, with the successive assignments of the estate to which it adheres, until its termination and vesting in the plaintiff. But the defect in the argument is in the false premises assumed, that such lien was formed at all between the original parties to the transfer of the bid, so as to attach to the estate in Gray, or that the passage quoted was intended to bear, or by any

fair and just interpretation will admit of such meaning. The suggestion is outside of any supposed lien, and rests upon a different principle prevailing in the administration of remedial justice in a court of equity, which, in applications for specific performance, that are not of strict right, guides the action of the court in refusing relief to one who can, and will not do, what in equity he ought to do to another. As Gray owes equally the money advanced by his assignors, as that still due the vendor, and has become incapacitated by subsequent insolvency from paying to them that part of the consideration of the assignment, the intimation is that relief in obtaining title will be granted only when the full consideration of the original contract of purchase has been paid and discharged. This is the extent of the proposition, and whether pertinent to the facts of the present case, it does not countenance the assumption that while such an equity subsisted in favor of the assignors against Gray himself, it ceased upon the assignment of Gray and could not be further pursued.

To a proper understanding of the matter it becomes necessary to recall the material facts. Summarily, they are these:

Jacob Fraley, in the exercise of a power conferred in the will of Rachel Stokes, on January 1st, 1863, made sale of the land known by the name of "The Old Stokes Homestead," on a credit of 12 months, to Bledsoe and Maxwell, the highest bidders, for the sum of $26,180, whereof in twenty days thereafter they paid the administrator, in Confederate money, $15,210, which sum, with interest, was equivalent at the expiration of the credit, to $16,180, then paid. On March 6th Bledsoe and Maxwell endorsed their bid for the land, and some articles of personal property bought at the same sale, at an advance of $2,000 to Gray, at the same time taking from him a bond, that is dated, however, on the day previous, wherein he promises to pay them $16,108, expressed to be "in payment of the Stokes land, the remaining part to be paid to the administrator of the deceased, for all the balance due from us (them) to the estate."

On the 18th day of the next month, Gray offered to take up his bond with Confederate currency of which the assignor consented to accept $10,680 and no more. Thereupon, in the place of the first bond, Gray executed another in the sum of $7,500 : maturing in forty-five months, and bearing interest during the first twenty-one months at the rate of two per cent., and at the rate of six per cent. for the remainder of the time. A bond similar in terms and credit and for the same amount, had been before given by Bledsoe and Maxwell to one Edwards for money borrowed of him and used by them in making the early payment to the administrator, and the bond of Gray was put in a form that the one debt could be used in discharging the other. According to the testimony, Gray was to take up the claim held by Edwards and surrender it to the assignor in discharge of his own debt.

We give our unqualified assent to what is said of the nature and effect of these transactions in the former opinion.

"So that it is clear to be seen," remarks the court, "that the intention and expectation of the parties were, that upon his *paying to the estate the unpaid portion of the purchase money, Gray was to receive the title to the land, unencumbered with any liens in favor of his immediate vendors.* Their assignment to him was an absolute and unconditioned one therefore, so far as it depended upon the intention of the parties and their contract; and in the same plight and condition he had a right to assign it and did assign it; and, in that condition, it was acquired by the plaintiff. We know of no principle of equity upon which, under such circumstances, he should be deprived of the full benefit of his acquisition;" same Report, p. 178.

No such lien is contemplated, and no such incumbrance imposed, in the terms of the agreement, nor is either implied in the attending facts. The transfer is simple and direct, placing Gray in the precise position occupied by his assignors in respect to their accepted bid, and as they could, so could he demand a conveyance as soon as the residue of the debt due to the vendor was discharged. This is the only condition underlying the vendor's obligation to make title.

The undertaking of Gray to reimburse to his assignors the moneys previously paid by them upon the purchase, is purely personal, and distinct from the equitable estate passing to him, and this is accepted by them as a sufficient security for the performance of it. As evidence of the complete association of the obligation assumed, the substituted bond of April defers payment for more than three years beyond the period of credit fixed in the administrator's sale, so that when the administrator could demand and enforce payment of what was due him, Gray would be in no default in respect to his contract for which he could be held liable. How, then, can the discharge of a debt that he has yet three years in which to pay, enter into and become a condition precedent to his right to require the title, and how can the obligation, as an incumbrance, be fastened upon and follow the estate when conveyed?

We are unable to distinguish the present case favorably from that of *Smith* v. *Brittain*, 3 Ired. Eq., 347, cited in the former opinion, and discussed in the brief of petitioner's counsel, the facts in which are briefly these:

Brittain bid off the land under a decree of the court of equity in a suit for partition at the price of $5,656, whereof he paid part, and being pressed for the residue, agreed to sell his interest in the land to Smith for $3,800. This sum was paid to Brittain, and with it, and other money of his own, Brittain discharged the debt incurred in the purchase. It was afterwards discovered that the tenants had not and were unable to secure a good title to the property, and the inquiry was, to whom should the purchase money be returned. Brittain claimed all in excess of the sum advanced by Smith, and the latter claimed all, under the assignment. It was decided, that as, if the sale had been consummated, Smith would have taken the land, so, upon a rescission, he was entitled to all the money, as representing the land.

The common principle in all the cases is, that the assignor becomes subrogated to all the rights of the original bidder, and may enforce them against the vendor, as well in coercing a con-

veyance of the land, as in a return of the purchase money repre-
senting it, when the other is impracticable, and this without
regard to the source from which the purchase money may have
been derived. It is true one of the Court dissents, but this
does not weaken the clear and conclusive logic of the opinion, nor
impair the force of the adjudication as a precedent.

The testimony of the petitioner, that the payment of the last
bond of Gray was put in the distant future to meet a bond simi-
lar in terms, given by himself and Maxwell, even if the first
agreement was, as he says, that Gray was to repay them, as well
as pay what was still due the administrator, before getting the
legal title, it must be regarded as a superseding arrangement, since
it is entirely inconsistent with the other previously made, and to
neither was the administrator a party.

Aside then from the difficulty met in the rule of evidence,
which does not allow parol addition to the terms of a written
contract, and their legal operation, under the statute of frauds, it
must be manifest that all such difficulties disappear in the final
form which the transaction assumes.

If it were necessary in order to obtain title, to bring Bledsoe
and Maxwell before the court and require of them something to
be done to complete the assurance, they would not be compelled to
act in perfecting the title to an insolvent purchaser, who still
owed and could not pay the portion of the purchase money due
to them. But this is not necessary; the transfer puts Gray in
the same relation to the vendor as his assignors, and separates
them from it, so that he is permitted to demand of the vendor
the execution of the contract, as soon as full payment is made to
him. This is the result of the transfer, by the voluntary action
of the parties to it.

Therefore the relation of these parties are only those of cred-
itor and debtor, and no more equity remains in the former than
in the case of the vendor, who has conveyed the land and taken
only the personal obligation of the debtor for the unpaid pur-
chase money. *Blevins* v. *Barker, ante.*

We have carefully reconsidered our former ruling with the purpose of discovering and correcting any error that may have been committed in the former adjudication, yet we cannot forbear recurring to the principle upon which a rehearing is had, as announced in *Lewis* v. *Rountree*, 81 N. C., 20, and numerous cases preceding, within which this case can scarcely be included. No new authorities have been cited and no matter, then overlooked, called to our attention to unsettle our then expressed convictions of the law so as to disturb the conclusions arrived at.

The judgment must be affirmed.

No error.                                                        Affirmed.