R. N. HACKETT, Administrator, et al. v. F. J. McMILLAN et al.

*Unauthorized Appearance of Attorney — Combination Against Infants — Insufficient Complaint.*

1. In a suit, of the subject-matter of which a Court has jurisdiction, appearance by counsel gives jurisdiction of the parties thus appearing, though counsel have no authority to appear, and an innocent purchaser under a judgment rendered therein will be protected.

2. Where, in such case, parties estopped and injured by the adjudication lose property to which they are entitled, they may maintain an action for damages against those who combined to procure the adjudication. (CLARK, J., concurring, further contends that, if the property of which the parties have so been deprived is *in esse*, an action may be maintained by them for its specific recovery, provided they are not barred by the statute of limitations or by an estoppel arising from a judgment in a suit to which they have been made parties by process served upon them or by appearance of attorney actually authorized to appear for them.

CIVIL ACTION, heard before *McIver*, *J.*, at Fall Term, 1892, of WILKES Superior Court.

The action was originally begun by L. C. Stokes and Minnie Hunt, heirs at law of M. S. Stokes, deceased. Afterwards the administrator of M. S. Stokes was made a party plaintiff. The defendants moved to dismiss the action on the ground that it did not state facts sufficient to constitute a cause of action, and from an order allowing said motion and dismissing the action the plaintiff appealed.

The complaint was as follows :

1. That Mrs. Rachel Stokes, late of Wilkes county, North Carolina, died in the year 1860, having made and published a last will and testament, in which she devised her property of every description to be sold upon a credit of twelve months as soon as it could be conveniently done after her death, and she nominated and appointed her son, the late M. S. Stokes, as executor, who caused the will to be admitted to probate, but died without executing any of the trusts contained therein ; and thereupon one Jacob Fraley was appointed and qualified administrator *de bonis non*, with will annexed, giving bond and security as required by law.

2. That she left her surviving her sons M. S. Stokes and Hugh M. Stokes, and her daughters Ann Jones, wife of Roland Jones, and Adelaide R. Craine, wife of —— Craine, and her granddaughters Catherine J. Alexander, Sarah A.

Boushell, wife of Thomas S. Boushell, and Mary Hackett, which said sons, daughters and granddaughters were her next of kin and heirs at law; that said Hugh M. Stokes survived his mother and died intestate without issue; that the said M. S. Stokes, after having qualified as aforesaid, survived his brother Hugh M. and was killed in battle in 1863, leaving plaintiffs L. C. Stokes and Minnie Hunt, who intermarried with —— Hunt, her only children and heirs at law; that by the provisions of the will the said M. S. Stokes was to receive one-half of the proceeds of sale of stock, furniture and other perishable property; one-fifth of all property, real and personal; one-fifth of the $1,000 left in trust for Hugh M. Stokes; $1,000 to be paid to him to make him equal with other children for certain advances made and mentioned in the will, then *per stirpes* among her children was her estate to be divided.

3. That of the property described in the will is a valuable plantation situated in the county of Wilkes and on both sides of the Yadkin River, known as the old Stokes homestead, it being the plantation whereon the said Rachel Stokes and her husband had always lived, and worth at least fifteen thousand dollars, and also a great quantity of valuable personal property and other effects.

4. Professing to act under the power contained in the will, the said Jacob Fraley, on the 1st day of January, 1863, sold all the property belonging to the estate of his testatrix, including the old Stokes homestead, which was bid off by Jesse Bledsoe and one W. P. Maxwell at the price of $26,180, and on the 21st day of the same month the said Maxwell and Bledsoe paid said administrator the sum of sixteen thousand one hundred and eighty dollars in Confederate money, and on the 6th day of March, 1863, said Bledsoe and Maxwell sold and assigned all their interest in said land

to one Joseph Gray, and executed to him a paper-writing in the following words :

" We, Jesse Bledsoe and W. P. Maxwell indorse our bid in the purchase of the Rachel Stokes farm on the Yadkin River, sold on the 1st day of January, 1863, to Joseph Gray. We transfer our bid to Joseph Gray in everything purchased by us on day of sale.

                    " (Signed)          JESSE BLEDSOE,
" March 6th, 1863.                      W. P. MAXWELL."

At the same time they took from said Gray the following instrument :

" For value received I promise to pay Jesse Bledsoe and W. P. Maxwell the sum of $16,180 in payment of the Stokes land, the remaining part to be paid the administrator of the deceased, for all the balance due from us to the estate. Given under my hand and seal, 6th March, 1863.
                    "(Signed)          JOSEPH GRAY."

5. That on the 11th day of April, 1863, Gray offered to pay to Bledsoe and Maxwell the said sum of $16,180, but they declined to receive the whole amount from him, and thereupon he paid them the sum of $10,680 in such money, and gave them another bond, as follows:

" Forty-five months after date I promise to pay to the order of W. P. Maxwell and Jesse Bledsoe the sum of seven thousand five hundred dollars, bearing interest from date at two per cent. for the first twenty-one months, the remaining time at six per cent. The above amount not to be exacted in specie.

                    "(Signed)          JOSEPH GRAY, (Seal).
" April 18, 1863."

6. That on the 27th day of July, 1866, said Gray, being insolvent, conveyed all his interest in the land in trust to secure certain debts which he was then owing to one Bidding, and upon failure to pay the same the trustee, one Jobe Worth, sold, as he was authorized to do by said deed, the interest of said Gray in said land at public sale, when one W. L. White became the purchaser and took deed for the same.

7. That the said Maxwell having died, one A. B. Cox, who is now insolvent and a resident of some foreign country unknown to the plaintiffs, and the defendant F. J. McMillan were duly appointed and qualified as his administrators, and that on the 1st of March, 1867, the said Fraley, with will annexed of Mrs. Stokes, executed a deed whereby he conveyed the said tract of land to the said Cox and McMillan upon trust, that in case the balance due the said Fraley upon the original purchase of the land should not be paid by the 1st day of January, 1869, then they should sell the land, and, after paying the purchase-money, to divide the balance equally between the defendant Bledsoe and the heirs at law of said Maxwell, deceased.

8. Shortly after the execution of this last mentioned deed, and before the adoption of the Constitution of 1868, the said Cox and the defendants Bledsoe and McMillan, and the late Nathaniel Boyden acting as the counsel of the said Bledsoe, McMillan, and Cox, and also of the said Fraley, combined, confederated and agreed together to oust the said Joseph Gray, who was then in possession of said land, from the possession, and to place the said Bledsoe in possession of said land for the use and benefit of himself and said McMillan, said McMillan being a creditor of Maxwell, and in pursuance of said agreement and combination the said Nathaniel Boyden advised the execution of the deed already mentioned from the said Fraley, as administrator,

with will annexed, to said Cox and McMillan, and thereupon they immediately began an action of ejectment for the purpose of ousting the said Gray.

9. That after the said action was instituted they discovered that the legal title to the land being in the heirs at law of said Rachel Stokes, they could not recover in the action as then constituted, and thereupon the said N. Boyden and the defendants F. J. McMillan, Jesse Bledsoe and others met at points designated by the said Nathaniel Boyden, and after full consultation between them it was agreed that in order to oust the said Joseph Gray from the possession it was necessary to make the plaintiffs L. C. Stokes and Minnie Hunt, the children and heirs at law of M. S. Stokes, the executor named in the will, and who had been killed in battle in the year 1863, parties plaintiff; and, in pursuance of said combination and agreement, at the next term of the Superior Court of the County of Wilkes, they moved the said Court, through the said Nathaniel Boyden, who was an attorney at law practicing in said Court, to allow an amendment of the declaration in ejectment so as to state a demise to the fictitious plaintiffs by the said L. C. Stokes and Minnie Hunt, which said motion was allowed, and upon the declaration thus amended, and upon the Court alleging a demise by said L. C. Stokes and Minnie Hunt, they recovered in said action of ejectment, and upon the judgment so recovered a writ of possession issued, and said Joseph Gray was ousted of the possession of the said land, · and in pursuance of said combination and agreement the said Jessie Bledsoe and the said F. J. McMillan were placed in the possession of said land and received the rents and profits, worth $1,000 a year, from the time of said recovery at Fall Term, 1869, until ————.

10. At the time of the combination and agreement just stated the said children, L. C. Stokes and Minnie Hunt, were

of tender years, the eldest not more than ten years old, and without guardian to the suit, nor was any guardian *ad litem* appointed for them, and the said defendants well knew that they were using their names without lawful authority, and for their own use and benefit.

11. That afterwards the said W. L. White, as assignee of the said Joseph Gray, under sale by the said Worth, brought his suit to the Superior Court of Wilkes County for a specific performance of the contract, which said suit came on for trial at Spring Term, 1881, of said Wilkes Superior Court, upon the pleadings, reports and evidence, and was then and there decided, from which judgment so rendered an appeal was taken to the Supreme Court of North Carolina, and determined at February Term, 1883, of said Court, when it was adjudged and decreed that inasmuch as the said Joseph Gray had been ousted by the legal title of the said children, L. C. Stokes and Minnie Hunt, and upon the demise so fraudulently made in their names, the rents and profits received by the said Bledsoe and McMillan, or either of them, during the period elapsing, as aforesaid, were to be applied as rents and profits to the same, due the said plaintiffs in this action, which rents and profits, with principal and interest, amounted to more than six thousand dollars, and the sums received as rents and profits were so applied and extinguished the lien which the plaintiffs had upon the land for the unpaid purchase-money, and at said term it was decreed that they should convey the said land to the said White. All of which has been done.

12. That at the time of the commencement of the said action and the amendment of the declaration, as aforesaid, by instituting a count in the names of the children, L. C. Stokes and Minnie Hunt, they were infants when the case was put at issue by the answer of the defendants, when the several accounts were ordered, and were infants up to and

including the term of Court at which the decree was rendered by the Superior Court, that they were not represented by guardian and were not represented in said proceeding; in short, by the unlawful combination aforesaid they have been utterly defrauded of their rights in the premises.

13. That said Jacob Fraley is dead and his estate is utterly insolvent, and nothing can be made possibly from it by any process known to the law. The sureties upon his bond are also insolvent and nothing can be made of them; that plaintiffs are informed and believe that the said Jesse Bledsoe has contrived to put his property beyond the reach of creditors, as far as he can, so that it is doubtful whether anything can be made of him, and the plaintiffs' only available recourse is against the said F. J. McMillan and the estate of N. Boyden, deceased.

14. That the said N. Boyden, deceased, before the beginning of this action, having left a large real and personal estate, and having appointed the defendant A. H. Boyden his executor, and devised the real estate to his children, if it should appear by the answer of the defendants that the personal estate has been administered, then they pray that the devisees of the real estate may be made parties in this action.

*Relief.*—1. Wherefore plaintiffs pray that a reference may be had to ascertain the sum to which they were entitled by reason of the unpaid purchase-money, and which was a lien on the land, the title to which descended to them.

2. That all proper accounts may be taken to ascertain the said sum.

3. That for the same they have judgment against said F. J. McMillan, Jesse Bledsoe and A. H. Boyden, executor of N. Boyden, deceased, and against the devisees and heirs at law of said N. Boyden, if they should be made parties,

to the value of the land described or devised to them, and for costs of action.

Messrs. W. W. Barber, R. N. Hackett and G. N. Folk, for plaintiffs.
Messrs. D. M. Furches and Glenn & Manly, for defendants.

BURWELL, J.: The sole question presented in the appeal is this: Does the complaint state facts sufficient to constitute a cause of action?

In White v. Jones et al., 88 N. C., 166, in which case the plaintiffs here were defendants, RUFFIN, J., states one of the questions presented by that appeal as follows: "Whether the sums due from the defendant Bledsoe for rents during his occupation of the land are to be appropriated to the satisfaction of the amount ascertained to be due him, or to the debt still due the estate of Mrs. Stokes for the balance of the purchase-money thereof?" And, discussing that, in a subsequent part of his opinion, he says: "Virtually the relation subsisting between the plaintiff and the heirs at law of Mrs. Stokes since his purchase of the equitable interest is that of mortgagor and mortgagee, and having by their action evicted him and put the defendant Bledsoe in possession, they are accountable to him for the rents and must look to their tenant Bledsoe for the same." And, announcing the conclusion to which he had come, he says: "It is also declared that the plaintiff is entitled to credit upon the debt due the defendant Neal as the administrator of Mrs. Stokes for the balance of the purchase-money for the rents ascertained to have been received by the defendant Bledsoe."

The allegations of the complaint are to the effect that in the action, called by Justice RUFFIN the action of the heirs of Mrs. Stokes, by which Gray was evicted from the land

and Bledsoe was put in possession, the plaintiffs, then infants of tender years, were made parties plaintiff by the defendants here "without lawful authority and for their (defendants') own use and benefit," and that this was done by "combination and agreement" of the defendant and others.

If two or more persons combine and agree to do a wrongful act, they are liable to the person injured by that act for such damages as result. To make a person a party plaintiff to an action, without proper authority so to do, is a wrongful act, for which an action will lie if injury comes thereby to the person whose name was thus improperly used. Blk. Com., Vol. III, p. 166 ; *Metcalf* v. *Alley*, 2 Ired., 38. In the case last cited the injury complained of was the being compelled to pay costs. Here the injury alleged to have resulted from the unwarranted use of plaintiffs' names was this : they lost a great part of what Justice RUFFIN, speaking for the Court, said was virtually a mortgage debt due in effect to them, though payable immediately to the administrator of Mrs. Stokes for their benefit. They were estopped to hold him responsible for this loss, for it was caused by *their* act, and the rents were paid to one who was *their* tenant, as the law adjudged. For the most potent reasons it is held that an innocent person is protected by the judgment of a Court having jurisdiction of the subject-matter and of the parties. Appearance by counsel gives jurisdiction of the persons thus appearing (*England* v. *Garner*, 90 N. C., 197), though counsel have no authority so to appear. And therefore it comes about that the persons thus estopped and thus injured by an adjudication binding upon them, though made without their knowledge or consent, are driven to seek redress from those who combined and agreed to procure such adjudication.

HACKETT v. McMILLAN.

We are not required now to determine what is the measure of plaintiffs' damages, if the commission of the wrongful acts complained of is established. We only decide that the facts set out in the complaint constitute a cause of action.

Error.                                            Reversed.

CLARK, J., concurring : I concur in the opinion. As the loss was money in this case, there is probably no other remedy, and the plaintiffs could in any event elect to take this recourse. But if the property whose possession is lost is in esse, as real estate, for instance, I am of opinion that the owners who are deprived of it by the judgment of the Court made in a cause in which their names appear as parties without their knowledge or consent, and without process served on them, are not denied the right of recovery of the specific property, when not barred by the statute of limitations or any act amounting to an estoppel. Certainly this is so when there is no other remedy by reason of those perpetrating the wrong of entering them as parties without authority being insolvent. They cannot be deprived of their property without compensation or due process of law. This is forbidden by both the State and Federal Constitutions.