CASE 7—PETITION EQUITY—DECEMBER 13.

## Hammar et al. vs. City of Covington.

### APPEAL FROM KENTON CIRCUIT COURT.

By the charter of the city of Covington, the city authorities are imperatively required to keep the streets, &c., clean and in repair when they have been once improved; and their action is ministerial.

The city council would subject itself to an indictment for suffering a street to become out of repair and remain in that condition. (7 *B. Mon.*, 38.)

Where it is the duty of the city council to keep the streets in repair, and, in consequence of the dilapidated and ruinous condition of a street, it has become inconvenient and dangerous for carriages and other vehicles to pass along it, and houses fronting on such street are in danger of being destroyed by reason thereof and the negligence and failure of the council to repair it, the owners of such houses, residing therein, may maintain a writ of mandamus against the council to compel them to have the street repaired. (10 *Casey*, 296; *Ib.*, 508; *Civil Code, sec.* 526.)

STEVENSON & MYERS, for appellants, cited *City Charter of Covington;* 3 *Hill*, 612; 11 *Wendell*, 539; 1 *Kent*, 467; 24 *Barb.*, 170; 5 *Selden*, 163; 7 *B. Mon.*, 38; *Civil Code, sec.* 523; 22 *Barb.*, 404; 18 *B. Mon.*, 849; *Ib.*, 9; 11 *Ib.*, 154; 18 *B. Mon.*, 13; 18 *B. Mon.*, 804; *Angell on Highways, sec.* 222; *Ib., sec.* 283; 2 *Eden on Injunction*, 267–8, 3d ed.; *Story's Eq., section* 924; 12 *B. Mon.*, 615; 2 *Story's Eq.*, sections 861, 862; *Jeremy on Eq. Jurisp.*, chapter 2, section 1; 10 *B. Mon.*, 172; 10 *Casey*, 293; *Ib.*, 496.

JOHN M. CASEY, for appellee.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

The appellants, in their petition, allege that they, (except appellant Mauser,) are the owners of and residents upon property fronting on the south side of First or Front street, in the city of Covington, between Shelby street on the east, and Garrard street on the west, and extending back 134 feet.

That First or Front street was laid out and dedicated by the original proprietors of said city 50 feet wide, and that the shore of the Ohio river, binding said street on the north, was also dedicated to said city by said proprietors, as a public landing or wharf.

That by the charter of the city, under which it has been organized and is governed, the title to all the streets, alleys, shores of rivers, landings, wharves, and public grounds of every description within its corporate limits, is vested in said city, for the use, benefit and easement of the inhabitants and citizens thereof.

That the common council of the city is vested with the full and exclusive power, by the charter, to fill, grade, pave or macadamize all the streets and alleys within the limits of appellee, and that the common council has the exclusive power to establish all wharves and landings on the banks and shores of the Ohio and Licking rivers within the limits of said city, and is required by the charter to keep the same in repair ; and, to enable said common council to construct, grade and keep in repair, the streets, alleys and sidewalks in the city, said common council has power and authority to levy and collect a tax from the owners of the property abutting said streets, alleys, &c., sufficient for the purpose ; that said council has the exclusive power to establish and regulate wharves and docks, and to establish and regulate the grades of all wharves and landings, and all banks of the Ohio and Licking rivers, within the corporate limits of the city ; and, by the levy of an annual tax on the property and inhabitants of said city, and by other means, to raise sufficient sums of money for said purposes.

Appellants also allege that by virtue of the authority conferred by the said charter, the appellee had entered upon and taken possession of First or Front street, between Shelby and Garrard streets, as early as 1850, and had graded and macadamized the same, and had taken possession of the shore of the Ohio river which binds said street on the north, and had, by an ordinance, declared said shore to be a public landing ; and that appellee, by its officers, was leving and collecting wharfage from all vessels, boats and water-crafts of every description, which landed there.

That the shore of the Ohio river, along said Front street, is of a loose sandy texture ; that when the Ohio river rises above its ordinary stage, and the water comes in contact with said surface soil, it washes or wears away the surface, and said street

has been for years wearing away by the action of the water, until it is now reduced in many places to less than one-third of its original width, and that carriages can scarcely now pass along it; that said street is greatly out of repair and is in a ruinous state; that it is difficult and dangerous for appellants to pass to and from their property; that it is necessary to have a wall built to protect the street, and, unless it is done, the street will be rendered wholly useless, and they will not only be deprived of the use and enjoyment of it, as a way of approach to their property, but it will become a nuisance, and their houses will be in danger of being destroyed.

They aver that, as the owners of the property on the south side of said street, they are ready and willing to pay their half of the cost of repairing said street, and that appellee, as the owner of the property on the opposite side of said street, and of the street itself, is bound by law to repair the same and pay half the cost of repairing, but that it has wholly refused to do so, although they have repeatedly called upon the common council and requested and urged it to make said repairs, but the council had persistently refused to make said repairs.

They therefore ask for an injunction, commanding appellee to make said repairs; but, if they should not be entitled to that remedy, then they ask for a rule against the city to show cause why a mandamus shall not be awarded them to compel appellee, through her officers, to make the necessary repairs on said street, and for all appropriate relief.

The appellee demurred to the petition, and the demurrer was sustained by the court below. Appellants then tendered an amended petition, and asked leave to file it, to the filing of which appellee objected; the objection was sustained, and the original petition was dismissed, to which appellants excepted, and have brought the case up for revision.

By *section* 2, *article* 1, of an act to amend and reduce into one the several acts concerning the city of Covington, (*session acts* 1849–50, *page* 239,) it is provided, that all the streets, roads, lanes, alleys, commons, market-spaces, public squares and grounds, and public landings in said city, be and the same are vested in the city.

By *section* 7 of *art.* 2, the council is fully authorized and empowered to cause all the streets and alleys, market-spaces and lanes, in said city, to be graded and paved, macadamized or turnpiked, at the expense of the owners of lots fronting such street or alley.

By *section* 8, *art.* 2, the council has the power to have the streets and alleys in the city filled, leveled and graded for the purpose of carrying off the water, or preparatory to paving or turnpiking.

By *section* 9, *art.* 2, it is made the duty of the council, and it is vested with power, to have the streets, alleys or sidewalks in said city repaired, whenever they are out of repair.

By *section* 19 of said article it is provided, that "the council shall have exclusive power to establish and regulate markets and market-spaces, wharves and docks, and to fix the rates of wharfage and other fees for the use thereof; they shall also have exclusive power to establish and regulate the grades of all wharves and landings, all banks of the rivers Ohio and Licking within the corporate limits, and all side-walks, streets, alleys, lanes, spaces and commons of the city. They shall have, also, the exclusive control of the streets, side-walks, lanes, alleys, market-spaces and other public grounds, within the corporate limits, and *shall cause the same to be kept clean and in repair.*"

The act of incorporation, as we have seen, having vested the title to all the streets, alleys, public grounds and shores of rivers, within the corporate limits, in the city, and conferred full power on the common council to establish and build wharves, improve the shores of rivers, and establish landings, for the use and accomodation of the citizens, and for the public good; and, in furtherance of that object, is, by the *7th section*, *art.* 2, fully authorized, upon the presentation of a petition in writing of the owner or owners of the larger part of the ground between the points to be improved, fronting on any street or alley, public square, &c., to contract for the grading, paving or macadamizing or turnpiking the the same; and the common council may, by a vote of all the members elect, cause said improvements to be made without such petition.

Now, although the owners of the larger portion of the ground on First street between Shelby and Garrard streets in said city, (as is alleged,) have petitioned the council to have the repairs made, the council failed or refused to do it.

But, it is alleged, that this street, between the points before named, had been, as early as 1850, graded and macadamized; and, after having been thus improved, it has been permitted to become in the ruinous condition described, for the want of the necessary repairs.

Whether or not by the language of the *7th section*, *supra*, it is left to the discretion of the council to make an improvement upon a street, by grading, &c., upon a petition in writing by the owners of the larger portion of the ground fronting said lot, and whether the city, owning the ground on the opposite side of said street, although not divided into lots, would be compelled to pay for half of said improvements, are questions which we do not deem necessary now to decide; for, if the language in the preceding sections be only permissive, the phraseology in the 19*th section* is very different, and, as we understand it, imperatively requires the city authorities to keep streets, &c., clean and in repair when they have been once improved; and the offer upon the part of appellants to pay one-half of the cost of repairing certainly did not deprive them of the right to demand of the council the performance of a duty required of them by law.

There can be no doubt that the council would subject itself to an indictment for suffering the street to become out of repair and remain in that condition. (*Commonwealth vs. Trustees of Hopkinsville*, 7 *B. Mon.*, 38.)

The ruinous condition of the street, as described in the petition, may be regarded as a nuisance, and, if it was strictly a public one, and the appellants had no more grounds of complaint than others, they could not maintain their suit. But they represent that they own houses fronting on said street, all of them except one reside in their said houses, and that, in consequence of the dilapidated and ruinous condition of the street, it has become inconvenient, and even dangerous, for carriages and other vehicles to pass along it, and, if not re-

paired soon, their houses will be in danger of being destroyed. These allegations in the petition are admitted by the demurrer.

The condition of the street arises from the negligence and failure of the council to repair it; the power to do it belongs exclusively to the council, and appellants, who suffer the greatest inconvenience from the negligence of the council, cannot, by their own mere act, abate the nuisance; and the remedy by indictment would be ineffectual for their relief. It is obvious, from the statements in their petition, then, that appellants have sustained such special injury as to entitle them to a civil action against the city authority.

It is the duty of the city council to cause said street to be repaired, and their action in making the contracts and providing the means for payment is ministerial. (*Anderson county court vs. Stone and son*, 18 *B. Mon.*, 852; *Kaye vs. Kean*, *Ib.*, 847.) The proper form of remedy against them, we think, is the writ of mandamus, which is defined to be, an order of a court of competent and original jurisdiction, commanding an executive or ministerial officer *to perform an act*, or omit to do an act, the performance or omission of which is enjoined by law. (*Sec.* 526, *Civil Code.*)

This was held to be the appropriate remedy by the supreme court of Pennsylvania in a case very similar to the one in hand. (*The Borough of Uniontown vs. the Commonwealth ex rel. Veech*, 10 *Casey*, 296; *Ib.*, 508.)

We are of opinion that appellants' petition set forth a good cause of action, and the demurrer should have been overruled. Wherefore, the judgment is *reversed*, and the cause remanded for further proceedings not inconsistent with this opinion.