### R. G. A. LOVE v. J. C. SMATHERS.

*Execution Sale—Trust Estate..*

Where A executed a note for the purchase of land and having paid part thereof gave his note for the remainder with B and C as sureties, and had title executed to B who agreed orally that he would pay the balance due; afterwards B sold and conveyed the land to the defendant who purchased for value and without notice of the agreement; *Held,*

(1) That A had no legal or equitable interest in the land subject to sale

under execution upon a judgment obtained subsequent to the convey-ance to the defendant.

(2) That the equity of A in the land, even if enforceable against B, was not such as could be enforced against the defendant at the time of the execution sale.

(3) That the trust estate in A, even if existing under the oral agree-ment with B, was not a pure and unmixed trust liable to sale under execution under the act of 1812.

(*Tally* v. *Reid*, 72 N. C., 336 ; *Battle* v. *Petway*, 5 Ired., 576 ; *McKay* v. *Williams*, 1 Dev. & Bat. Eq., 398 ; *Hinsdale* v. *Thornton*, 75 N. C., 381, cited and approved.)

CIVIL ACTION to recover possession of Land, tried at De-cember Special Term, 1879, of HAYWOOD Superior Court, before *Graves, J.*

Verdict and judgment for defendant, appeal by plaintiff.

*Messrs. J. H. Merrimon* and *A. W. Haywood,* for plaintiff. *Messrs. Merrimon, Fuller & Fuller,* for defendant.

DILLARD, J. This is an action to recover land, and the facts material to the points on which the case is decided in this court are as follows :   William Johnston contracted to sell the land in controversy to one John Moody, and took the vendee's bonds for the purchase money and gave to him his own bond for title.   Afterwards, John Moody, having paid a part only of the purchase money, procured the ven-dor to take his bond for the balance due, with his son, H. M. Moody and J. R. Love, as sureties and surrendered his original bonds.   This being done, Johnston, on the written request of John Moody, executed title to the son, H. M. Moody, and the jury find that H. M. Moody agreed orally with John Moody that he would pay the balance still due of the purchase money to Johnston, and that they have never paid any part thereof.

H. M. Moody, in December, 1865, sold and conveyed to

defendant, Smathers, the jury say, for a valuable considera-
tion and without notice of the oral agreement between John
Moody and H. M. Moody for the payment of the debt to
Johnston by H. M. Moody. The debt not being paid to
Johnston, he sued on the bond of John Moody, H. M. Moody
and J. R. Love; and on the recovery of judgment, J. R.
Love or his executors paid the amount thereof. Thereupon
the executors of J. R. Love brought suit to spring term,
1873, against John Moody, the principal, for the sum paid
as his surety, and at the return of the writ, John Moody
confessed judgment therefor, which the defendant alleged
and the jury found was fraudulently obtained, after the sum
had been previously paid to the executors of J. R. Love,
with the intent thereby to defeat his title under H. M.
Moody. On this judgment the lands of defendant, con-
veyed to him mediately from John Moody through H. M.
Moody, was levied upon and sold by the sheriff, when the
plaintiff, who was one of the executors of J. R. Love, became
the purchaser under execution and received the sheriff's
deed, purporting to convey the land to him, and upon this
title the plaintiff brings this action and demands judgment
for the possession.

There was an execution in favor of one Killian in the
hands of the sheriff at the time of the sale, issued on a judg-
ment of prior lien to the judgment in favor of Love's exe-
cutors, but obtained after the sale and conveyance to defend-
ant, to which the money raised by the sale was applied.
And evidence of this fact was offered and admitted to meet
the defence of invalidity of the judgment in favor of Love's
executors, under which the sale was made according to the
recitals in the sheriff's deed, and there was exception to the
proof received to show the collusion and fraudulent charac-
ter of the Love judgment.

Our opinion proceeds on the assumption that the Love
judgment was valid, and that the sheriff having in his

hands an execution on that judgment, and also on the judgment in favor of Killian, sold under both ; and therefore it is not necessary to pass on the exceptions to the evidence admitted for the impeachment of the Love judgment, nor on the question of the sufficiency of the Killian execution in the hands of the sheriff, to sustain the plaintiffs' title, notwithstanding the recital in the deed of a sale under the Love execution only.

Stripping the case of all unnecessary issues and facts, the question for our consideration and determination is, whether, assuming the sale to have been made under both of the executions and that they were valid, the debtor, John Moody, had at the time of the sale any title, legal or equitable, such as might be sold under execution and a title pass under the sheriff's deed. We are of opinion that John Moody had not such a trust estate as could be levied upon and sold under execution. A trust estate of a debtor in land could not be levied on and sold under execution until the act of 1812, nor under that act if it was to be raised by construction of a court of equity by reason of fraud, or being an expressed or implied trust in an honest transaction, unless the debtor, at the time of the sale, was in such situation as to have the legal title decreed to him if he were to sue for it. The debtor being in a condition to call for the legal title is received as having the absolute beneficial property, as much so as if he had the legal estate ; and hence in such case the act, instead of putting the creditor to go into equity as formally, allowed the trust estate to be sold by execution, and gave to the sale and sheriff's deed the legal operation to take the title out of the trustee and vest it in the purchaser. *Tally* v. *Reid,* 72 N. C., 336 ; *Battle* v. *Petway,* 5 Ired., 576 ; *McKay* v. *Williams,* 1 Dev. & Bat. Eq., 398 ; *Hinsdale* v. *Thornton,* 75 N. C., 381.

From these and many other cases in construction of the act of 1812, we extract the principle that the legal estate is

not to be divested out of the trustee by a sale, if he or any other person than the *cestui que trust* has an equity in the same property. Now take it that the deed executed to H. M. Moody by directions of John Moody, was to pay the balance due of the purchase money on the bond to which he and J. R. Love were sureties, and that a trust thereby was created for the exoneration of John Moody ; still, upon the fact found by the jury of a purchase on valuable consideration and without notice of such agreement by defendant, although he knew as admitted in his evidence that the bond to Johnston for the purchase money was outstanding and unpaid, the trust orally declared or implied could not be enforced in equity against the defendant. It could not be done, for the reason that by the act of John Moody an absolute title had been conveyed to H. M. Moody, defendant's vendor; and thereby he had enabled him to draw defendant in to buy the land and pay him the money without any knowledge of the alleged trust, which the jury find he did not have. Under these circumstances the defendant had a strong equity, at least equal to, if not superior to any equity in favor of John Moody, and having got the advantage of the legal title, the equity of John Moody, even if enforceable against his son, H. M. Moody, was not such as could be enforced against the defendant at the time of the purchase by plaintiff. 2 Blackstone, 330; Adams Eq., 148—152.

In this view then, John Moody at the sale by the sheriff had not an equity on which he could demand and have decreed the legal title to him against defendant. And therefore there was no trust estate in John Moody, which could be sold and conveyed to plaintiff.

But look at the case in another aspect: The deed to H. M. Moody who was a surety with J. R. Love for John Moody without doubt passed the legal title to him. And suppose a trust to exist by virtue of the oral agreement alleged, about the sufficiency of which we do not intend to express

any opinion, it was not a pure and unmixed trust, which alone is liable to sale under the act of 1812. H. M. Moody had become bound personally as surety for John Moody, and having the legal title he held it in trust for himself *pro tanto* the payments made by his father before the execution of the deed, which were a gift; and if not good against creditors, the gift was at least good against John Moody himself; and he held also for himself as an indemnity against loss by reason of his liability as surety of John Moody. And H. M Moody having such rights, John Moody could not at the time of the sale, even if H. M. Moody still had the legal title, have enforced the legal estate to be conveyed to him and thus have left him a loser as to the payments which had been given to him, and exposed to the sacrifice of the land at sheriff's sale, and to the consequent hazard of loss from being still bound as his surety. H. M. Moody had the right, having the legal title, to use the advantage of a judicious private sale for his relief as surety, and not to loss by a forced execution sale. No court would by decree deprive him of his legal title without being exonerated.

In this view of the case also, the trust in favor of John Moody, if in law there was any, was not a pure trust but mixed, and so, was not liable to sale under execution.

This is our opinion on the material facts as collected from the record proper, and the case of appeal made out by the judge. And we here take occasion to say that the case of appeal is very voluminous, containing a recital of all the exhibits and all the evidence, and all that was done on the trial, and the judges ought to omit every thing not necessary to present the exceptions for error.

There is no error and the judgment of the court below is affirmed. Let this be certified.

No error.                                   Affirmed.