This is a suit by the creditors of Alspaugh to subject to the payment of Alspaugh's debts certain land conveyed to Hine by Alspaugh, as administrator of G. W. Norwood, by deed in fee dated 16 January, 1881, and recorded in 1893. The plaintiffs allege that while this deed was in form an absolute deed, it was, in fact, merely a security for money advanced by Hine to Alspaugh; and that Hine was never in truth the purchaser of the property, having never paid one dollar of the consideration recited in the deed, but that the same was paid by Alspaugh; that the deed was made upon the secret trust that Hine should reconvey to Alspaugh upon the payment of the loan; and that, therefore, the said deed was incapable of registration and void as to creditors. None of the debts herein sued on were incurred before 1891; and none were reduced to judgment before May, 1894. Upon the execution of the deed of 1891, Hine loaned Alspaugh $1,200 and also $2,000 on 8 February, 1890, when he executed to Alspaugh a bond for title to convey to Alspaugh, upon the payment of the said loans then aggregating $3,200, the land conveyed to Hine by said deed. At divers times on and prior to 8 January, 1894, Hine paid to or for Alspaugh sums of money which, with the $3,200, aggregated over $6,000, and on said day Hine and Alspaugh came to a full settlement, whereby Hine surrendered to Alspaugh all said evidences of debt, in consideration of which Alspaugh relinquished all interest in the land and agreed to surrender to Hine his bond for title. This bond was actually surrendered in January, 1896, being regarded in the interim by both parties as fully satisfied and cancelled. Upon the trial the plaintiffs (364) admitted in open court that there was no actual intent to defraud on the part of defendants, but claimed that the deed of 1881, under which Hine claimed, was fraudulent and void in law, and, under *Page 251 
the registry acts of the State, as against the claims and judgments of the plaintiffs. "The court having intimated an opinion that the rights of themortgagor J. W. Alspaugh, under his bond, c., having been all surrendered for valuable consideration and in good faith before plaintiffs' liens attached, and that the deed to defendant being on the registry and expressing the true contract of parties at the time before liens were obtained, the said deed was valid against the claims of plaintiffs. The plaintiffs, in deference to such intimation, submitted to a nonsuit and appealed."
We think there was no error in the intimation of his Honor, although we cannot agree with him in treating the deed of 16 January, 1881, as a mortgage. It was not intended as a mortgage, and had none of its essential features. Littleton, section 332, says: "If a feoffee, at a certain day, c., forty pounds of money, then the feoffer may re-enter; in this case the feoffee is called tenant in mortgage." "A mortgage at common law was a conveyance of land, sometimes in fee and sometimes of a lesser state, with a stipulation called a clause of defeasance, by which it was provided that in case a certain sum of money were paid by the feoffer to the feoffee, on a day named, the conveyance should be void, and either the estate should by virtue of the defeasance, revest in thefeoffer, or he should be entitled to call upon the feoffee for areconveyance of the same." Bispham's Eq., section 150. Practically the same definition is given in Pingrey Mortgages, section 6. In all definitions of a mortgage the estate reverts to the grantor or feoffer. Fetter Eq., section 141; Abbott Law Dict., 130; 4 Kent Com., 136. (365)
In this State, mortgages are practically the same as at common law, with the exception of the equity of redemption and the equitable incidents pertaining thereto.
In this case the deed was made by said Alspaugh as administrator of the estate of G. W. Norwood to said Hine, reciting that, by virtue of an order of the Superior Court of Forsyth County and after due notice, he sold the land at public auction to said Hine, he being the highest bidder, at the price of $235. It is alleged in the complaint that one Tise bid off the land, but this fact is neither positively admitted nor proved, and in any event is immaterial, as he sets up no claim whatever. Alspaugh, as administrator, and Alspaugh, as an individual, are entirely distinct personalities in law. If, as administrator, he sold to himself, or to a stranger to hold in trust for himself, his deed was voidable, but not void, and he could be held to account only by the heirs at law or creditors of Norwood. This deed was not intended as a mortgage and cannot be construed as such, for in the event of its defeasance the land would revert to the heirs of Norwood. The legal title never *Page 252 
was in Alspaugh, but remained in the heirs of Norwood until it vested in Hine by operation of the deed made by Alspaugh merely as the hand of the court. It cannot be said that the legal title to land sold under execution ever vests in the sheriff, but in proper cases his deed is valid because he sells as the agent of the law under the mandate of the court. If he sells to another for the benefit of himself, his deed therefor, however tainted, can in no sense be construed into a mortgage, because in case of defeasance the land could never revert to him.
The deed of 16 January, 1881, made by Alspaugh, as administrator, was intended to convey to Hine a fee simple estate in the land, (366) and did convey such an estate, subject to impeachment only by the heirs or creditors of Norwood. But it is admitted that Alspaugh alone paid for the land by charging himself as administrator with its purchase price, and that the $1,200 paid by Hine to Alspaugh coincidently with the execution of the deed was a mere loan. This being true, its effect was to raise in favor of Alspaugh a resulting trust in the land subject to the repayment to Hine of the money loaned. 1 Perry on Trusts, p. __; Lewin on Trusts, 143; 2 Story Eq. Jur., 1201; Bispham Eq. Jur., section 79; Pegues v. Pegues, 40 N.C. Eq., 418; Hargrave v. King,ibid., 430; Cunningham v. Bell, 83 N.C. 328; Thurber v. La Roque,101 N.C. 301; Summers v. Moore, 113 N.C. 394. Trusts are of various kinds, but may be divided generally into express andimplied, the latter being raised by operation of law, either to carry out the presumed intention of the parties or to protect against fraud. Implied trusts are either resulting or constructive. Resulting trusts are of four kinds, as usually defined, only one of which need now be considered. In this State all implied trusts are generally denominatedparol trusts, referring to their origin and nature of proof rather than their incidents and results. Some eminent authorities, as Lewin and Perry, make a separate division of implied trusts as distinguished both from resulting and constructive trusts; but this distinction does not seem to be recognized in this State, nor, indeed, in the statute of frauds (29 Charles II chap. 3, sec. 8) which refers to a trust "arising or resulting by implication or construction of law." See also Bispham Eq., p. 118; I Pomeroy Eq., p. 136, sec. 155; Story Eq. Jur., sec. 980; Bouvier Law Dict.; Wharton Law Lex.; Stimson Law Glossary.
The rule as to the kind of resulting trusts, herein considered, almost universally adopted by text writers and approved by the courts, is that of Lord Chief Baron Eyre, in Dyer v. Dyer, 2 Cox, 93, which is (367) as follows: "The clear result of all the cases, without a single exception, is that the trust of a legal estate, whether taken in the names of the purchaser and others jointly or in the names of others without the purchaser, whether in one or several, whether jointly or *Page 253 
successive, results to the man who advances the purchase money." This rule, of course, is not intended to apply to property purchased in the name of a wife, child or near relative, which is usually brought under the rule of advancements.
Resulting trusts, arising by operation or construction of law, do not come within the statute of frauds, and may be proved by parol. Lewin,supra, p. 667; Fetter supra, sec. 128; Bispham, supra, sec. 80; 10 Am. 
Eng. Enc., 25 and 26; Foy v. Foy, 3 N.C. 296; Shelton v. Shelton,58 N.C. 292; Riggs v. Swan, 59 N.C. 118; Whitfield v. Gates, ibid., 136;Shields v. Whitaker, 82 N.C. 516. In fact, in this State they are generally known as "parol trusts." 6 N.C. Digest, 466; 7 ibid., 431, and cases cited. As such trusts are incapable of registration they cannot be affected by the registry laws.
At the time this trust arose Alspaugh does not appear to have owed any one but Hine. Even if there had then been outstanding debts of Alspaugh, Hine, holding the legal title, together with an equitable lien upon the resulting trust, occupied a strongly defensive position.
This equity could not have been sold under execution, as it was not a pure and unmixed trust. Everett v. Raby, 104 N.C. 479; Love v.Smathers, 82 N.C. 369. In Hinsdale v. Thornton, 75 N.C. 381, Pearson,C. J., says: "Where one has an estate in equity, viz., a trust estate, which enables him to call for the legal estate without further condition, save the proof of the facts which establish his estate, this trust estate is made the subject of sale under fi. fa. But where one has (368) only a right in equity to convert the holder of the legal estate into a trustee and call for a conveyance, the idea that this is a trust estate, subject to sale under fi. fa., is new to us." The only remedy of existing creditors would have been an action in the nature of a bill in equity. Jimmerson v. Duncan, 48 N.C. 537; Gowing v. Rich, 23 N.C. 553;Gentry v. Harper, 55 N.C. 177; Morris v. Rippy, 49 N.C. 533; Love v.Smathers, supra. Even then it would have been liable for the existing equity of Hine. The bond for title given by Hine to Alspaugh on 8 February, 1890, did not change the nature of the trust, but was simply a written declaration thereof.
While an equitable interest in land may not be transferred by parol, it may be abandoned or released to the holder of the legal title by matter inpais, provided such intention of the parties is clearly shown. Brown on Statute of Frauds, p. __; 1 Greenleaf Ev., 302; 2 Story Eq., Jur., 770;Cumming v. Arnold, 3 Met., 494; Faw v. Whittington, 72 N.C. 321; Millerv. Pierce, 104 N.C. 389; Falls v. Carpenter, 21 N.C. 237; Banks v.Banks, 77 N.C. 186; Herren v. Rich, 95 N.C. 500; Holden v. Purefoy,108 N.C. 163; Taylor v. Taylor, 112 N.C. 27; Fortune v. Watkins,94 N.C. 304. In McDougald v. Graham, *Page 254 
75 N.C. on p. 316, Pearson, C. J., says: "We conclude that by force of sale and the cancellation of the notes and title bond, the defendant became the absolute owner of the land." In Taylor v. Taylor, 112 N.C. on p. 30,Avery, J., says: "Where the vendee enters under a bond for title and has executed notes for the purchase money, which are held by the vendor, the surrender of bond and the notes by the holders to the maker and obligor, respectively, has been repeatedly declared such a renunciation as would annul the contract of purchase."
It is not disputed that in the settlement of 8 January, 1894, (369) it was the clear intention and agreement of the parties that Alspaugh should abandon and release to Hine all interest in the land, and that in pursuance thereof Alspaugh subsequently surrendered Hine's bond for title, and Hine immediately surrendered Alspaugh's notes equal in amount to the full value of the land, and entered in possession of the premises.
This settlement, being in entire good faith, extinguished all of Alspaugh's equitable rights in said property and, by annexing the beneficial ownership to the legal title, vested in Hine a fee simple estate, certainly as against any of the plaintiffs. As we have seen, unless the deed of Alspaugh, as administrator, conveyed a fee simple, then the title remained in the heirs of Norwood. If, to its character as a fee simple deed, we superadd the qualities of a mortgage, we are forced to the following remarkable conclusions:
1. That the same instrument can be the deed of one party and the mortgage of another; 2. That a mortgage can be made by one having neither the legal nor the equitable title; 3. That a presumed defeasance can revest
land where it was never vested, and can cause it to revert to one who never owned it. We do not feel called upon to adopt so novel and strained a construction simply to create a constructive fraud in law where it isadmitted that no actual fraud exists in fact.