A. B. GORRELL, et als. v. J. W. ALSPAUGH and L. I. Hine.

*Deed Absolute on Face—Security for Loan—Mortgage—
Trusts—Extinguishment.*

1. A, an administrator, having license to sell land of his intestate, sold
   and conveyed it in January, 1881, to H., by deed absolute on its
   face, and co-incidentally borrowed $1200 from H for his own use,
   and charged himself with the purchase price. In February, 1890,
   he borrowed another sum from H, who then gave him a bond for
   title, agreeing to re-convey the land to A upon the repayment of
   the aggregate of the two loans. In January, 1894, H having loaned
   other sums to A, they had a settlement, whereby H surrendered
   all of A's notes, and A agreed to surrender the bond for title, which
   he subsequently did. A was not indebted to others in 1881. The
   deed to H was not recorded until 1893, before which time A became
   largely indebted; *Held,* that the deed so made to H was not, as to
   the administrator's creditors, a mortgage (since upon repayment of
   the loan the land would have reverted to A), but a resulting trust
   in favor of A, subject to the repayment of the loans, arose from the
   conveyance.

2. The giving of the title bond by H to A, in 1890, was only a written
   declaration of the original trust, and did not change its nature.

3. Such trust could not have been sold under execution against A, nor
   could it have been subjected to the payment of existing debts, ex-
   cept by an action in the nature of a bill in equity, and in that event
   the land would have been liable for the existing equity of H.

4. While an equitable interest in land may not be transferred by parol,
   it may be abandoned or released to the holder of the legal title by
   matter *in pais,* provided such intention is clearly shown; hence,
   the settlement made in 1894 between H and A, being in good faith,
   extinguished A's equitable rights and vested in H a fee simple
   title.

Civil action, tried before *Hoke, J.,* and a jury, at Jan-
uary, 1897, Special Term of Forsyth Superior Court. The
facts appear in the opinion. In deference to the opinion
of his Honor, the plaintiffs submitted to non-suit and ap-
pealed.

*Messrs. Jones & Patterson* and *A. E Holton*, for plaintiffs (appellants).
*Messrs Watson & Buxton*, for defendants.

DOUGLAS, J.: This is a suit by the creditors of Alspaugh to subject to the payment of Alspaugh's debts certain land conveyed to Hine by Alspaugh, as administrator of G. W. Norwood, by deed in fee dated January 16, 1881, and recorded in 1893. The plaintiffs allege that while this deed was in form an absolute deed, it was, in fact, merely a security for money advanced by Hine to Alspaugh; and that Hine was never in truth the purchaser of the property, having never paid one dollar of the consideration recited in the deed, but that the same was paid by Alspaugh; that the deed was made upon the secret trust that Hine should *reconvey* to Alspaugh upon the payment of the loan; and that, therefore, the said deed was incapable of registration and void as to creditors. None of the debts herein sued on were incurred before 1891; and none were reduced to judgment before May, 1894. Upon the execution of the deed of 1891, Hine loaned Alspaugh $1,200 and also $2,000 on the 8th day of February, 1890, when he executed to Alspaugh a bond for title to convey to Alspaugh, upon the payment of the said loans then aggregating $3,200, the land conveyed to Hine by said deed. At divers times on and prior to January 8, 1894, Hine paid to or for Alspaugh sums of money which, with the $3,200, aggregated over $6,000, and on said day Hine and Alspaugh came to a full settlement, whereby Hines surrendered to Alspaugh all said evidences of debt, in consideration of which Alspaugh relinquished all interest in the land and agreed to surrender to Hine his bond for title. This bond was actually surrendered in January, 1896, being regarded in the *interim* by both parties as fully satisfied and cancelled. Upon the trial the

plaintiffs admitted in open court that there was no actual
intent to defraud on the part of defendants, but claimed
that the deed of 1881, under which Hine claimed, was
fraudulent and void in law,. and, under the registry Acts of
the State, as against the claims and judgments of the plain-
tiffs. "The court having intimated an opinion that the
rights of the "*mortgagor*, J. W. Alspaugh, under his bond,
&c., having been all surrendered for valuable consideration·
and in good faith before plaintiff's liens attached, and that
the deed to defendant being on the registry and expressing
the true contract of parties at the time before liens were
obtained, the said deed was valid against the claims of
plaintiffs. The plaintiffs, in deference to such intimation,
submitted to a non-suit and appealed."

We think there was no error in the intimation of his
Honor, although we cannot agree with him in treating the
deed of January 16, 1881, as a mortgage. It was not in-
tended as a mortgage, and had none of its essential fea-
tures. Littleton, Section 332, says: "If a feoffment be
made upon such condition that if the feoffor pay to the
feoffee, at a certain day, &c., forty pounds of money, then
the *feoffor* may *re enter;* in this case the feoffee is called
*tenant in mortgage.*" "A mortgage at common law was a
conveyance of land, sometimes in fee and sometimes of a
lesser estate, with a stipulation called a clause of *defeasance*,
by which it was provided that in case a certain sum of
money were paid by the feoffor to the feoffee, on a day
named, the conveyance should be void, and either the es-
tate should by virtue of the defeasance, *revest* in the *feoffor*,
or *he* should be entitled to call upon the feoffee for a *recon-
veyance* of the same." Bispham's Eq. Vol. 1, Section 150.
Practically the same definition is. given in Pingrey on Mort-
gages, Vol. 1, Section 6. In all definitions of a mortgage
the estate reverts to the *grantor or feoffor* Fetter's Eq.,

Section 141; Abbott's Law Dict., p. 130; 4 Kent Com., 136. In this State, mortgages are practically the same as at common law, with the exception of the equity of redemption and the equitable incidents pertaining thereto.

In this case the deed was made by said Alspaugh as administrator of the estate of G. W. Norwood to said Hine, reciting that, by virtue of an order of the Superior Court of Forsyth county and after due notice, he sold the land at public auction to said Hine, he being the highest bidder, at the price of $235. It is alleged in the complaint that one Tise bid off the land, but this fact is neither positively admitted nor proved, and in any event is immaterial, as he sets up no claim whatever. Alspaugh, as administrator, and Alspaugh, as an individual, are entirely distinct personalities in law. If, as administrator, he sold to himself, or to a stranger to hold in trust for himself, his deed was *voidable*, but not *void*, and he could be held to account only by the heirs at law or creditors of Norwood. This deed was not intended as a mortgage and cannot be construed as such, for in the event of its defeasance the land would revert to the heirs of Norwood. The legal title never was in Alspaugh, but remained in the heirs of Norwood until it vested in Hine by operation of the deed made by Alspaugh merely as the hand of the court. It cannot be said that the legal title to land sold under execution ever vests in the Sheriff, but in proper cases his deed is valid because he sells as the agent of the law under the mandate of the court. If he sells to another for the benefit of himself, his deed therefor, however tainted, can in no sense be construed into a mortgage, because in case of defeasance the land could never revert to him.

The deed of January 16, 1881, made by Alspaugh, as administrator, was *intended* to convey to Hine a fee simple estate in the land, and did convey such an estate, subject

to impeachment only by the heirs or creditors of Norwood. But it is admitted that Alspaugh alone paid for the land by charging himself as administrator with its purchase price, and that the $1,200 paid by Hine to Alspaugh co-incidently with the execution of the deed was a mere loan. This being true, its effect was to raise in favor of Alspaugh a *resulting* trust in the land subject to the repayment to Hine of the money loaned. 1 Perry on Trusts, p. —; Lewin on Trusts, 143; 2 Story Eq. Jur., 1201; Bispham Eq. Jur., Section 79; *Pegues* v. *Pegues*, 40 N. C., Eq., 418; *Hargrave* v. *King*, Ibid, 430; *Cunningham* v. *Bell*, 83 N. C., 328; *Thurber* v. *La Roque*, 101 N. C., 301; *Summers* v. *Moore*, 113 N. C., 394. Trusts are of various kinds, but may be divided generally into *express* and *implied*, the latter being raised by operation of law, either to carry out the presumed intention of the parties or to protect against fraud. Implied trusts are either *resulting* or *constructive*. Resulting trusts are of four kinds, as usually defined, only one of which need now be considered. In this State all implied trusts are generally denominated *parol* trusts, referring to their origin and nature of proof rather than their incidents and results. Some eminent authorities, as Lewin and Perry, make a separate division of *implied* trusts as distinguished both from resulting and constructive trusts; but this distinction does not seem to be recognized in this State, nor, indeed, in the Statute of Frauds (29 Charles, 11 Ch. 3, Section 8) which refers to a trust "arising or resulting by implication or construction of law." See also Bispham Eq., p. 118; 1 Pomeroy Eq., p. 136, Section 155; Story Eq. Jur., Section 980; Bouvier Law Dict.; Wharton Law Lex.; Stimson's Law Glossary.

The rule as to the kind of resulting trusts, herein considered, almost universally adopted by text writers and approved by the courts, is that of Lord Chief Baron Eyre, in

*Dyer* v. *Dyer*, 2 Cox, 93, which is as follows: "The clear result of all the cases, without a single exception, is that the trust of a legal estate, whether taken in the names of the purchaser and others jointly or in the names of others without the purchaser, whether in one or several, whether jointly or successive, *results* to the man who advances the purchase money." This rule, of course, is not intended to apply to property purchased in the name of a wife, child or near relative, which is usually brought under the rule of advancements.

Resulting trusts, arising by operation or construction of law, do not come within the Statute of Frauds, and may be proved by parol. Lewin, *supra*, p. 667; Fetter, *supra*, Section 128; Bispham, *supra*, Section 80; Am. & Eng. Enc. Vol. 10, pp. 25 and 26; *Foy* v. *Foy*, 3 N. C., 296; *Shelton* v. *Shelton*, 58 N. C., 292; *Riggs* v. *Swan*, 59 N. C., 118; *Whitfield* v. *Gates*, Ibid, 136; *Shields* v. *Whitaker*, 82 N. C., 516. In fact, in this State they are generally known as "parol trusts." 6 N. C., Digest, p. 466; 7 Ibid, p. 431, and cases cited. As such trusts are incapable of registration they cannot be affected by the registry laws.

At the time this trust arose Alspaugh does not appear to have owed any one but Hine. Even if there had then been outstanding debts of Alspaugh, Hine, holding the legal title, together with an equitable lien upon the resulting trust, occupied a strongly defensive position.

This equity could not have been sold under execution, as it was not a pure and unmixed trust. *Everett* v. *Raby*, 104 N. C., 479; *Love* v. *Smathers*, 82 N. C., 369. In *Hinsdale* v. *Thornton*, 75 N. C., 381, Pearson, C. J., says: "Where one has an estate in equity, viz., a *trust estate*, which enables him to call for the legal estate without further condition, save the proof of the facts which establish

his estate, this trust estate is made the subject of sale under *fi fa.* But where one has only a *right in equity* to convert the holder of the legal estate into a trustee and call for a conveyance, the idea that this is a trust estate, subject to sale under *fi fa,* is new to us." The only remedy of existing creditors would have been an action in the nature of a bill in equity. *Jimmerson* v. *Duncan,* 48, 537: *Gowing* v. *Rich,* 23 N. C., 553; *Gentry* v. *Harper,* 55 N. C., 177; *Morris* v. *Rippy,* 49 N. C., 533; *Love* v. *Smathers, supra.* Even then it would have been liable for the existing equity of Hine. The bond for title given by Hine to Alspaugh on February 8, 1890, did not change the nature of the trust, but was simply a written declaration thereof.

While an equitable interest in land may not be *transferred* by parol, it may be *abandoned* or *released* to the holder of the legal title by matter in *pais,* provided such intention of the parties is clearly shown. Brown on Statute of Frauds, p. —; Greenleaf Ev., Vol. 1, 302; 2 Story Eq. Jur., 770; *Cumming* v. *Arnold,* 3 Met., 494; *Faw* v. *Whittington,* 72 N. C., 321; *Miller* v. *Pierce,* 104 N. C., 389; *Falls* v. *Carpenter,* 21 N. C., 237; *Banks* v. *Banks,* 77 N. C., 186; *Herren* v. *Rich,* 95 N. C., 500; *Holden* v. *Purefoy,* 108 N. C., 163; *Taylor* v. *Taylor,* 112 N. C., 27; *Fortune* v. *Watkins,* 94 N. C., 304. In *McDougald* v. *Graham,* 75 N. C., on p. 316, Pearson, C. J., says: "We conclude that by force of sale and the cancellation of the notes and title bond, the defendant became the absolute owner of the land." In *Taylor* v. *Taylor,* 112 N. C., on p. 30, Avery, J., says: "Where the vendee enters under a bond for title and has executed notes for the purchase money, which are held by the vendor, the surrender of bond and notes by the holders to the maker and obligor, respectively, has been repeatedly declared such a renunciation as would annul the contract of purchase."

It is not disputed that in the settlement of January 8, 1894, it was the clear intention and agreement of the parties that Alspaugh should abandon and release to Hine all interest in the land, and that in pursuance thereof Alspaugh subsequently surrendered Hine's bond for title, and Hine immediately surrendered Alspaugh's notes equal in amount to the full value of the land, and entered in possession of the premises.

This settlement, being in entire good faith, extinguished all of Alspaugh's equitable rights in said property and, by annexing the beneficial ownership to the legal title, vested in Hine a fee simple estate, certainly as against any of the plaintiffs.   As we have seen, unless the deed of Alspaugh as administrator conveyed a fee simple, then the title remained in the heirs of Norwood.   If, to its character as a fee simple deed, we superadd the qualities of a mortgage, we are forced to the following remarkable conclusions:

1.  That the same instrument can be the deed of one party and the mortgage of another; 2.  That a mortgage can be made by one having neither the legal nor the equitable title; 3.  That a presumed defeasance can *revest* land where it was never *vested*, and can cause it to *revert* to one who never owned it.   We do not feel called upon to adopt so novel and strained a construction simply to create a constructive fraud in law where it is *admitted* that no *actual* fraud exists in fact.

FURCHES, J., dissenting: On the 16th of October, 1879, the defendant, Alspaugh, as administrator of Norwood, sold the real estate in controversy at the price of $235, at which sale the plaintiffs allege that one Tise bid off the property for the defendant. Alspaugh.   This property was a vacant lot in the city of Winston at the time of the sale. And it is alleged and not denied that Alspaugh took charge

120—47

of the property, claiming it as his own, and soon after the
sale erected thereon a brick store house, and that he con-
tinued to use, rent and control the property as his own
until the 8th day of January, 1894; that on the 16th day
of January, 1881, the defendant, Hine, loaned the defend-
ant, Alspaugh, $1,200 —using the exact language of the
defendant, Hine, in his testimony, "I loaned that money;
I did not pay him anything." And he further says, "Al-
spaugh gave note for $1,200, all I advanced to him that
day." He also says he never paid the $235 purchase money
and supposes Alspaugh did, and that he supposes the mat-
ter was understood by the defendant, Alspaugh, and Tise.
Hine further says in his testimony: "The first debt was
contracted January 16, 1881, for $1,200 for money bor-
rowed, for which he (Alspaugh) gave me his note. He
made me a deed to the post office lot, and I agreed ver-
bally to convey it back to him when he paid this debt.
The next debt was contracted February 18, 1890, for
$2,000 for borrowed money." And at this date he gave
Alspaugh a bond to reconvey the property to him upon
his paying the two notes, amounting to $3,200. That Al-
spaugh afterwards borrowed other money of him, and he
had no security for any of it except the deed dated on the
16th of January, 1881. Hine further testifies that on the
8th day of January, 1884, he and Alspaugh had a settle-
ment, when it was ascertained that Alspaugh owed him
for borrowed money and for debts he paid for Alspaugh
on that day, where he was bound as surety, the sum of
$6,000; that it was then agreed that he should hold the
deed of 1881 and become the absolute owner of the prop-
erty, and that at that time he surrendered to Alspaugh the
notes he held against him and Alspaugh agreed to surren-
der to him the bond for title, but this was not actually
delivered to the witness until a short time before the trial,

that he charged interest on the debts he held against Alspaugh, until the time of this settlement in January, 1894, and Alspaugh received the rents for the property to that time, and that he has been controlling, improving and receiving the rents since that date; that this deed of the 16th of January, 1881, was registered in August, 1893.

This, to my mind, so clearly makes this deed from Alspaugh to Hine a mortgage, without a clause of defeasance, that it would seem almost unnecessary to cite authorities to show that it is. But as it is not admitted that it is a mortgage, indeed, as it is contended that it is not a mortgage, I will cite some of the authorities which, I think, sustain my position that it is a mortgage.

Where it is shown that the conveyance is a security for debt, and that was the real object of the conveyance, it is a mortgage. Bispham, Section 154.

If the conveyance is to secure a debt, it is a mortgage, whether it is absolute in form or has a clause of defeasance. 3 Pomeroy Eq. Jur., Section 1192, note 1.

An absolute deed is a mortgage if it is a security for debt. 3 Pomeroy, *supra*, Section 1196.

The true test as to whether it is a mortgage, is, whether it was given as a security for debt. "Once a mortgage, always a mortgage." Pomeroy, *supra*, Section 1193. At the time of making a mortgage, the mortgagor cannot waive his right to redeem. Bispham, Section 153. "Once a mortgage, always a mortgage." And if once a mortgage, the parties cannot, by any stipulation between them, "no matter how explicit," change it from a mortgage to an absolute conveyance. Pomeroy, Section 1194.

An absolute deed made as a *security* for money is, in effect, a mortgage, and cannot be *registered*, and is *void* as to creditors. *Gulley* v. *Macy*, 84 N. C., 434; *Gregory* v. *Perkins*, 15 N. C., 50.

An absolute deed intended as a security for debt, or an indemnity for a liability, cannot afterwards be changed into an absolute conveyance. And as it is a mortgage, without a clause of defeasance, or a security for debt, it cannot be registered and is void as to creditors. *Halcombe v. Ray*, 23 N. C , 340.

And the mortgagor and mortgagee, or grantor and grantee (if you choose to call them so), cannot afterwards, by any agreement between them, change this deed into an absolute conveyance. They may agree that the grantee shall surrender his debts in full payment and satisfaction of the fee simple interest, and this will not change the estate into an absolute estate. And though the deed be redelivered, still the transaction will be fraudulent and void as to the creditors of the grantor at the time or before this agreement took place, by which the grantee agreed to surrender his debts and hold the deed as an absolute conveyance. *Halcombe* v. *Ray, supra.* Indeed, every phase of the case now under consideration is discussed and decided by this strong, clear, ringing opinion of Chief Justice Ruffin. And before passing upon the case now before the court we should read and consider well the opinion in *Halcombe* v. *Ray.*

The intelligent Judge who tried this case below called this conveyance, from the defendant, Alspaugh, to the defendant, Hine, a "mortgage" and treated it as such, although he held that the plaintiffs were not entitled to recover. When it gets here and is considered under the light of authorities which the court below probably did not have at hand, it is found that it cannot be sustained if it is called a *mortgage*. And, therefore, it is sought to sustain this transaction between Alspaugh and Hine by calling it a *trust*. But whether you call it a mortgage or a trust, the facts and the transaction are the same. It is still a *secu-*

*rity for debt*, as said in *Gulley* v. *Macey, supra*, and as is
said in every authority I have consulted during this investi-
gation.    And the diligence of counsel have furnished us
none to the contrary.    But suppose you call it a trust, it is
a trust for the security of a debt.    And how this can bene-
fit the defendants I confess my inability to see.    Trusts for
the security of debts stand precisely on the same footing as
mortgages—both are void as to creditors until they are
registered.    *Code,* Section 1254.    And an absolute deed,
with a secret or verbal trust for the benefit of the grantor,
can no more be registered than a mortgage without a
clause of defeasance, *Womble* v. *Battle*, 38 N. C., 182;
*Blevins* v. *Barker*, 75 N. C., 436.    But this is too plain
to require argument or authority.    The mortgage without
the defeasance cannot be registered, because it does not
show the whole transaction; in other words, it does not
tell the truth.    The absolute deed, with a secret or verbal
trust, is incapable of being registered for the same reason;
it does not tell the truth.    And the deed from Alspaugh
to Hines did not tell the truth.    Besides, its not having a
clause of defeasance, it is said it was made in consideration
of $235, paid by Hine, which is not true.    The defendants
are endeavoring to escape the force and conclusiveness of
the authorities cited by calling this deed, from Alspaugh
to Hine, *a parol trust*, and to work out a defence under
the doctrine enunciated in *Shelton* v. *Shelton*, 58 N. C.,
292; *Riggs* v. *Swan*, 59 N. C., 118, and that line of
authorities.

The doctrine stated in these cases is not disputed, but it
has no application here.    The doctrine of these cases is
that where A buys land and has the deed made to B, with
a parol trust in favor of C, this is good; for the reason that
such conveyances are not within the Statute of Frauds and
no *creditors are interested.*    And so is this deed, from

Alspaugh to Hine, good as between the parties, but not good as against the creditors of Alspaugh.  Nor can it be made good by registration, for the reason that it cannot be registered.  And as Lord Coke would say, "herein lies the diversity" between this case and *Shelton* v. *Shelton, supra,* and that line of cases, and brings it within the doctrine enunciated in *Halcombe* v. *Ray*, *Gregory* v. *Perkins*, *Gulley* v. *Macey* and that line of authorities.

The defendants also attempt to distinguish this case from *Halcombe* v. *Ray*, *Gregory* v. *Perkins* and *Gulley* v. *Macey*, upon the ground that Alspaugh did not have the legal title, which they say was in the heirs of Norwood. But if he did not have the legal title, he had bought it through Tise and had paid for it in 1880, as his report shows.  And this gave him an equitable estate in the lot, and no one is interested in the legal title but Norwood's heirs, and they are not complaining.  Indeed, it must be supposed that they have ratified the sale made, and the purchase money paid seventeen or eighteen years ago, and no complaint made by them until now.  This deed put the legal title in Hine, even as against Norwood's heirs.  *Highsmith* v. *Whitehurst*, at this term.  But if Alspaugh only had the equitable title, he had the right to mortgage this. *Bank* v. *Clapp*, 76 N. C., 482: *White* v. *Jones*, 88 N. C., 166.

But there is another reason why the defendants cannot avail themselves of this plea, even if it could do them any good, and I do not think it could.  And that is this: They are estopped to do so.  The defendant, Alspaugh, cannot do so.  He cannot defeat the claims of creditors, upon the ground that he is not the legal owner of the property.  In fact he makes no such defence.  He does not even file an answer.  Hine cannot do so, as he holds under Alspaugh and agreed to reconvey to him upon Alspaugh's paying

him the money he had loaned him.   It would be singularly strange if both Alspaugh and Hine, or either of them, should be in a better condition than they would be if Alspaugh had owned the absolute, undisputed, legal and equitable estate in this lot.   I cannot give my assent to such a proposition.

The plaintiffs put in evidence the report of Alspaugh, showing that Tise was the purchaser of the lot at the price of $235, and Alspaugh's settlement of the Norwood estate showing that Alspaugh had charged himself with this sale and had settled for the same.   And the undisputed evidence was that all the debts of the plaintiffs were made before the 8th of January, 1894, the alleged date of settlement, these debts having been made in 1891, 1892 and 1893.   This being so, they were brought within the rule laid down in *Halcombe* v. *Ray*, and the plaintiffs were entitled to have the deed from Alspaugh to Hine, dated January 16, 1881, declared void as to their debts.   Upon the allegations in the complaint and the admissions in the answer, the evidence of the defendant, Hine, and the undisputed evidence as to the date of the plaintiff's debts, it was the duty of the Judge to charge the jury that, if they believed the evidence, they should find the first, third and fourth issues in the affirmative.

FAIRCLOTH, C. J., did not sit on the hearing of this case.