JOHN J. HARBISON, JOSEPH B. HARBISON, OWEN GATH-
RIGHT, JR., and WALTER WALKER, trading as Har-
bison & Gathright, v. JOSEPH S. HALL.

(Decided May 5, 1899).

*Conflict of Evidence—Corroborative Testimony—Business*
*Usage—Account—Payment.*

1. Where. there is a conflict of evidence as to the payment of the
   account in suit—the defendant testifying that it was paid,
   and one of plaintiffs testifying that it was not paid, evidence
   of the custom of the plaintiff firm in regard to their system
   of entries in their books, when checks and moneys were
   received, and that their books failed to show any evidence of
   payment by defendant—is admissible as corroborative tes-
   timony.
2. Circumstances showing the business methods and usages of the
   firm might assist the jury in arriving at the truth of the
   matter.

CIVIL ACTION on an account for $88.38, for goods sold and
delivered, taken by appeal from the Justice's Court of GRAN-
VILLE County to the Superior Court.

*Case on Appeal.*

This civil action, to recover for goods sold and delivered, to
the defendants by the plaintiffs, was tried at the November
Term, 1898, of Granville County Superior Court, before
*Timberlake, J.,* and a jury. The plaintiffs first offered in
evidence an itemized statement of their account against the
defendant, duly verified before a Notary Public, which said
account showed that the goods were sold and delivered to the
defendant in March and April, 1895.

Plaintiffs then offered the depositions of Walter Walker.
and C. W. Huggins. Upon objection by the defendant the

following questions and answers in the depositions of Walter Walker were excluded by the Court, and the plaintiffs excepted:

Q. What has been the custom of the house in regard to the receipt of money whilst you have been so connected with it? A. All checks, moneys and receipts pass through my hands, and I enter same on the cash book, and have had charge of all the books of the concern, and the making of deposits in the banks, and a general supervision of all money transactions which had to pass through my hands.

Q. Have you made any investigation of your books to ascertain if the amount has been paid; if so, to what extent have you made an investigation? A. We have; we have not only looked over our books carefully, but have thoroughly examined our letter files to see whether any remittance sheet had ever been received from Mr. Hall, and find that he has never made any payment on this account.

Q. Is it possible, or probable, that the defendant in this case may have made a payment on his account, which may have been credited to the wrong account, or omitted? A. That is not possible under the system under which we keep our books. If our cash had been out of balance, and over, we would certainly have known that some payment had been made which we had not credited, and we would have at once traced up the matter. If the payment had been credited to some other party, it would have been discovered in re-checking. I can state, however, that there was no such want of balance in our books.

Q. If the defendant had not paid this debt sued for, how did your firm happen to wait on him so long? A. Hall had a fair rating, and having a great number of accounts on our books, we only reached his account from time to time, when we dunned him for same. Getting uneasy about it after a

long time, we spoke to our salesman who travels that territory, and came to the conclusion that Hall was good for the amount, and would ultimately pay. Preferring not to go into litigation with him about it, we delayed from time to time, until a considerable period had elapsed. Had he at any time previously repudiated the account, we would have put the matter in the hands of our attorney sooner.

Upon objection by defendant the following questions and answers in the deposition of C. W. Huggins were excluded by the Court, and the plaintiffs excepted:

Q. Have you examined the books to see whether the account of Joseph S. Hall, or any part of it, was paid during your connection with the firm? A. Yes, sir; I have examined them. They do not show that any part of that account has ever been paid. Where no letter comes with the remittance, we always make a memorandum of the man's name and address, with the amount he paid, and the bill it is intended to settle, or any part of the account it is intended to settle, or whether it is simply on account, on a special slip of paper we have for the purpose, and that is filed away in our letter files just as if it were a remittance letter. An examination of our files, which are very carefully kept, shows no such slip, or no remittance letter from this party.

Q. What was the habit of the firm during your connection with it as to giving receipts? A. Always on receipt of these checks or remittances of any kind, after checking them up by the books I immediately wrote a receipt right from the letter or remittance; no time ever expired between the checking up and the sending of receipts; it was always done immediately. So there was no chance of any slip in not sending a receipt to any one. In that connection I would say that checks to the order of the firm were promptly endorsed by the firm and deposited in bank for collection, and the party would have the endorsement of the firm upon the check, in addition

to the receipt, as evidence of payment.   If remittance was made by postoffice order, he would, of course, have the records of the postoffice to refer to; or if made by express he would have the receipt of the express company, all of which would be in addition to the receipt which I would send him.

Q. What was the habit of the firm in regard to the collection of past due accounts?   A. As fast as accounts were due, we would immediately send a statement to the party owing same, and this was usually done several times, and if not paid, a draft would be sent.   At regular intervals statements were sent to every one owing bills due and past due, and this was done in this case.

Q. How did it happen that you were so late in putting this account in your attorney's hands?   A. The defendant in the case had a good rating, and special attention was generally given to the weaker accounts, and on account of his rating we allowed the matter to go longer than would otherwise have been done.

Plaintiffs offered no further evidence.

Defendant was examined as a witness in his own behalf, and testified that the account was correct in amount, but several of the articles embraced therein were purchased from other parties than the plaintiffs; that he ordered these articles through the salesman of the plaintiffs; that he had paid in full to the plaintiffs and the other parties, the amount now claimed by plaintiffs.

Evidence of the good character of the defendant was offered and the plaintiffs admitted that his character was good.

The following issues were submitted to the jury:

(1).   Is the defendant indebted to the plaintiffs?

Answer:   No.   (By jury).

(2).   If so, in what amount?   Answer:

His Honor charged the jury that the defendant, having

admitted the account and pleaded payment, the burden of proving payment was on the defendant. There was judgment for defendant upon the verdict, and plaintiffs moved for a new trial. Motion denied.

Plaintiffs excepted and appealed to the Supreme Court, and assigned as error the exclusion of evidence as hereinbefore appears.

E. W. TIMBERLAKE, J.

*H. M. Shaw,* for appellant.
*Edwards & Royster* and *J. B. Batchelor,* for appellee.

FAIRCLOTH, C. J. Action for goods sold and delivered. Plea: Payment. The defendant testified that he had paid the entire account. One of the plaintiffs testified that the account had not been paid. The plaintiffs then offered to show by their cashier and bookkeeper, in corroboration of their testimony, the custom of the firm in regard to their system of entries in their books, when checks and moneys, etc., were received, and that an investigation of the books failed to show any evidence of payment by the defendant. This evidence was excluded by the Court, and the plaintiffs excepted and appealed.

There is error. The evidence was competent in support of the positive testimony of the plaintiffs. These were circumstances showing the business methods and usages of the firm, which might assist the jury in arriving at the truth of the matter. Such usage has been held competent. *Bank v. Pinkers,* 82 N. C., 377; *Vaughan v. Railroad,* 63 N. C., 11; I Greenleaf Ev., (1896), Sections 116 and 118.

Error.